George **BURRAS** and Millicent Burras, Defendants-Appellants,

v.

**CANAL CONSTRUCTION AND DESIGN COMPANY,** Plaintiff-Appellee.

No. 1–483 A 103.

Court of Appeals of Indiana, First District.

Nov. 20, 1984.

R. Wayne Greeson, Noblesville, for defendants-appellants.

John P. Price, Donald L. Jackson, Robert D. MacGill, Bingham, Summers, Welsh & Spilman, Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

This is an action for the breach of a construction contract. At trial, Canal Construction and Design (Canal) was awarded $9,864.07 in damages and $12,000 in fees based on the Burras' breach of the contract. The Burrases were awarded $7,970.00 on their counterclaim against Canal for defective performance and breach of Warranty but denied relief on certain other theories in their counterclaim. This denial together with the trial court's award of compensatory damages and its refusal to award the Burrases punitive damages form the basis of their appeal. The Burrases also challenge the propriety of the $12,000 attorney fee award. We affirm in part and reverse in part.

## FACTS

On August 25, 1980, the parties to the present action entered into a construction contract. Canal agreed to act as general contractor supervising the construction of a home for the Burrases in Noblesville, Indiana. The Burrases had previously received bids from other general contractors but became interested in hiring Canal after its second bid was approximately $30,000 less than the first bid. As further inducement, Canal presented a home in Eagle Creek as a model of work they had done in the past. Steve Miller, one of the principals of Canal, took the Burrases on a tour of the inside of the home, representing that Canal had managed its construction and done the trim carpentry and finishing work. Shortly thereafter, the contract for the construction of the Burras home was executed and Canal began work on the project about September 1, 1980.

A few months after construction began, differences arose between the parties. The house was to be substantially completed in 180 days. However, delays occurred and each side blamed the other for the delays. The contract price was set at $152,735, but by May of 1981, the Burrases had spent more than this amount and were dissatisfied with Canal's work. The dissatisfaction involved Canal's performance under the general contract and also trim carpentry which Canal was doing pursuant to a separate agreement executed with the Burrases in March, 1981.

On April 25, 1981, Canal received a letter from the Burrases stating that they felt compelled to alter the payment scheme originally set out in the general contract. Instead of submitting bills for material and labor to the Burrases for immediate payment on a weekly basis, payment would be made only after the Burrases were satisfied the work had been completed. On May 7, the Burrases received a letter in reply stating that such a modification was unacceptable to Canal and unless payments were made as originally provided in the contract, they would consider the Burrases

in default. After receiving this letter, Mrs. Burras went to the construction site and told Steve Miller that Canal would receive no more payments until the house was completely finished. At this point, Canal walked off the job and soon afterward sued the Burrases for breach of contract. The Burrases filed a counterclaim alleging that Canal had breached both the general and trim contracts by walking off the job and breached its express warranty regarding labor. The counterclaim alleged violation of Indiana Code section 32–8–1–2, slander of title, fraud, and conversion and requested punitive damages. The trial court entered a general verdict finding Canal liable for breach of warranty and defective performance. The trial judge dismissed the claims based on Indiana Code section 32–8–1–2, slander of title, fraud, and conversion.

## ISSUES

Due to our decision the issues presented for review are as follows:

1. Was there sufficient evidence to support the trial court's finding that the Burrases breached the construction contract?

2. Was the trial court's finding that the Burrases should receive damages for defective performance and breach of warranty inconsistent with the finding that the Burrases breached the construction contract?

3. Did the trial court err by involuntarily dismissing the Burrases counterclaims for:
   (a) Conversion
   (b) Fraud
   (c) Slander of title
   (d) Relief under Indiana Code section 32–8–1–2?

4. Was the damage award to the Burrases for Canal's defective performance and breach of warranty inadequate?

5. Was the trial judge's award of $12,000 in attorney fees to Canal excessive?

6. Was it proper for the trial court to award attorney fees incurred by Canal on appeal?

## DISCUSSION AND DECISION

### Issue One

The Burrases argue that the trial court erred in finding that they breached the contract. The general verdict by the trial judge states:

> "Comes now the Court and being duly advised now enters judgment for Plaintiff and against defendants on Paragraph 1 of plaintiff's complaint for breach of contract in the principal sum of $9864.07 with prejudgment interest in the sum of $1183.69 and attorney fees in the sum of $12,000.00 and the Court being duly advised now enters judgment for defendants and against plaintiff on defendant's counterclaims for defective performance and breach of warranty in the sum of $7970.90."

Record at 290.

The Burrases' argument is that the evidence is insufficient to support a finding that they breached the contract. Our standard on review of claims that the evidence is insufficient to support the trial court's judgment is clear.

> "In reviewing the sufficiency of evidence in a civil case, we will decide whether there is substantial evidence of probative value supporting the trial court's judgment. We neither weigh the evidence nor judge the credibility of witnesses but consider only the evidence most favorable to the judgment along with all reasonable inferences to be drawn therefrom. Only if there is a lack of evidence or evidence from which a reasonable inference can be drawn on an essential element of plaintiff's claim will we reverse a trial court."

*Martin v. Roberts,* (1984) Ind., 464 N.E.2d 896, 904.

In viewing the evidence most favorable to the judgment it appears that Burrases attempt to alter the payment scheme clearly constituted a breach of the construction contract. The provision in the contract regarding payment indicates unambiguously that the Burrases agreed to

pay for material and labor when these bills were presented to them by Canal.

"5. *Payments to Contractor. On a weekly basis,* Contractor shall submit to Owner and Owner's lender, all bills, invoices, schedules for payment, and other records submitted to Contractor for work done hereunder or materials delivered pursuant hereto. *Upon delivery* of such, *Owner,* or *Owner's lender* shall pay said amount, plus ten percent of such amount to Contractor. (Emphasis supplied.)"

Record at 351–63. The Burrases' letter to Canal dated April 25, 1981, attempting to alter the contractual provision stated in pertinent part as follows:

"[W]e feel compelled *to alter our past payment routine. [T]he new payment process* we feel would be fair to all concerned. It will be within accepted business practice. It will assure us of a comeback to contractors who, in our opinion, have not lived up to our expectations.

Therefore, the following payment procedure will be followed:

(1) Upon completion of all work by a given contractor, we will arrange for an inspection by both of us and the bank, with a subcontractor.

(2) If all items inspected are done satisfactorly [sic], arrangement for payment will be made within a reasonable time.

(3) If certain items are not completed to our satisfaction, notice will be given to the subcontractor who will make arrangement to complete or change the work in question. When this work is completed, arrangement will be made for payments within a reasonable time.

(Emphasis supplied.)"

Record at 376–77. Clearly, this letter represents an attempt by the Burrases to modify a term in the existing contract. The modification of a contract, since it also is a contract, requires all the requisite elements of a contract. 17 Am.Jur.2d *Contracts* § 465 at 935 (1964); *cf. Fort Wayne Bank*

*Bldg., Inc. v. Bank Bldg. & Equipment Corp. of America,* (1974) 160 Ind.App. 26, 309 N.E.2d 464. Therefore, the modification requires the assent of both parties. 17 Am.Jur.2d *Contracts* § 465 at 935 (1964). In the case at bar Canal quickly rejected the proposed modification and put the Burrases on notice that it would hold them to the original contract provisions regarding payment.

■ However, instead of complying with the original agreement, Mrs. Burras told Steve Miller Canal would not receive payment until the house was completely finished. At this point, the Burrases' refusal to comply with the provisions of the contract motivated Canal to walk off the job. The appellants argue that Canal's action constituted a breach of the contract. However, the particularly unequivocal acts by the Burrases indicate they repudiated the contract first and Canal was justified in suspending performance of its obligations under the contract.

"In accordance with the rule adopted by a majority of jurisdictions with respect to contracts generally, where a party to a building or construction contract announces his intention not to perform, the other party thereto may treat the contract as broken and sue at once for breach without waiting for the time fixed for performance."

13 Am.Jur.2d *Building Contracts* § 73 at 73 (1974); *see also Hammond Hotel & Improvement Co. v. Williams,* (1931) 95 Ind.App. 506, 523–24, 176 N.E. 154, *trans. denied* (1933). When Canal was faced with the acts of the Burrases prior to May 7, 1981, it could choose to treat the contract as terminated and sue for damages. *Hammond Hotel.*

■ Next, the appellants argue that in light of its failure to complete construction within 180 days the trial court should have found Canal breached the contract. The contract however required only that Canal "use its best efforts to ... have the dwelling substantially completed within 180 days." Also the contract excused delay due to labor problems, acts of God, or

causes beyond the control of the contractor. Record at 354. The evidence regarding delays was conflicting but there was evidence of events which, although causing delay, could have been excused as provided under the contract. Canal was not involved in drafting the plans, and Steve Miller testified that parts of the drawings were not detailed enough which caused delay. The slope of the lot made construction of the driveway more difficult and time consuming than expected. There was evidence that strong winds blew parts of the outside trim off during construction. Also, on at least two occasions, after certain parts of the house were completed, the Burrases decided they did not approve, and Canal had these parts torn down and redone. After the fireplace was completed, the Burrases decided they preferred an open fireplace and more work had to be done. After certain brick had been laid the Burrases asked that a different color of mortar be used in place of that which had already dried causing further delay. We believe there is sufficient evidence to support a finding that many of the delays were caused by circumstances beyond Canal's control and were therefore excused under the contract.[1]

*Issue Two*

■ The appellants next argue that it was inconsistent for the trial court to find Canal liable to the Burrases for breach of warranty and defective performance but not find Canal liable for breach of contract. The Burrases conclude that Canal's breach of warranty constituted a breach of the entire contract citing *Orto v. Jackson*, (1980) Ind.App., 413 N.E.2d 273. However, *Orto* does not hold that a breach of express warranty, in every case, constitutes a material breach in the construction contract. Before a breach of a warranty results in a breach of contract, the owner must, in certain cases, give the builders notice of the defects. *Orto* 413 N.E.2d at 276. In the general contract involved in this case there

was an express warranty that the work would be completed in a workmanlike manner. Also, the contract required that the builder be given an opportunity to remedy any defects. In the letter sent on April 25, 1981 the Burrases put Canal on notice concerning their dissatisfaction with the construction. However, this letter also proposed to modify the existing contract. The letter sent by Canal in response rejected the new payment scheme but expressed a willingness to work with the Burrases regarding any problems with the construction. Before Canal could remedy any defects, Steve Miller was confronted by Mrs. Burras who indicated her refusal to continue the payments as required by the contract. This justified the suspension of performance by Canal. Canal could no longer remedy any defects. Therefore, because Canal was not given an opportunity to remedy any alleged defects, any incidence of defective performance did not constitute a breach of the construction contract.

*Issue Three*

The Burrases' next series of arguments involve the involuntary dismissal of their counterclaim of conversion, fraud and slander of title. These claims were dismissed pursuant to Indiana Rules of Procedure, Trial Rule 41(B) which states:

"(B) Involuntary dismissal: Effect thereof. After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the weight of the evidence and the law there has been shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court

---

**1.** The appellants also argue that Canal's failure to complete the house constituted a breach of contract. However, since we have already de-

termined that Canal was justified in walking off the job after Burras' unilateral attempt to modify the contract this issue is moot.

renders judgment on the merits against the plaintiff or party with the burden of proof, the court, when requested at the time of the motion by either party shall make findings if, and as required by Rule 52(A). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision or subdivision (E) of this rule and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, operates as an adjudication upon the merits."

Before reaching the merits of their claims we must first determine our standard of review.

■ In the case at bar the trial judge dismissed these claims after hearing evidence from both sides. Also, because the rule requires the trial judge to weigh the evidence our standard on review of his involuntary dismissal should be the same as in any case where trial is to the court. 9 Wright and Miller *Federal Practice and Procedure* § 2376 at 248. Furthermore, we note that the appellants had the burden of proof on each allegation of the counterclaim and are, therefore, appealing from a negative judgment. On review we may neither judge the credibility of witnesses nor weigh the evidence. *Litzelswope v. Mitchell*, (1983) Ind.App., 451 N.E.2d 366. We may reverse only where the evidence is without conflict and points unerringly to a conclusion different from that reached by the trial court. *Public Service Company of Indiana, Inc. v. Gibbs*, (1984) Ind.App., 460 N.E.2d 992, *trans. denied.* In other words, Burrases can prevail on the following issues only if they are entitled to judgment as a matter of law. *Id.*

■ In turning to the merits of their appeal we first address the Burrases' claim of conversion. It was established at trial that when Canal left the job site it took keys, window screens, and a garage door opener which all belonged to the Burrases. The uncontroverted facts show Canal exerted dominion over this property to the exclusion and in defiance of the owner's right, under an inconsistent claim of title, thus establishing Canal's liability for con-

version. *Howard Dodge & Sons, Inc. v. Finn*, (1979) 181 Ind.App. 209, 391 N.E.2d 638. Canal admitted that it took the items but attempted to defend this act claiming it was done by mere oversight. However, *mens rea* is not an essential element of conversion. *Id.* Furthermore, Steve Miller, a principal of Canal, admitted that even after these items were discovered to be in the possession of Canal they were not returned. Therefore, the Burrases are entitled to judgment as a matter of law on their claim for conversion of the keys, window screens and garage door opener.

■ The Burrases also claim that a withdrawal of $1000 by Canal for work they did not perform was conversion. However, the evidence regarding the value of the work actually performed by Canal was at issue throughout the law suit. There was evidence that Canal did work beyond that required by the contract. The evidence was certainly conflicting and, therefore, we cannot say that Canal converted the $1000 amount as a matter of law.

■ Next, the Burrases argue that by representing themselves as fine trim carpenters, Canal committed fraud. The appellants contend this was a material representation that was false, which induced them to rely to their detriment. *South v. Colip*, (1982) Ind.App., 437 N.E.2d 494. We disagree. This statement was a representation of opinion and not of a material fact and thus, cannot support an action for fraud. *Royal Business Machines, Inc. v. Lorraine Corp.*, (7th Cir.1980) 633 F.2d 34; *see also*, 37 Am.Jur.2d *Fraud and Deceit* § 45 at 70–71 (1968).

■ The appellants also claim Canal's representation that it managed the construction of the home in Eagle Creek was fraudulent. We agree with the Burrases that this was a representation of a material fact. Also, there was testimony at trial by the owners of the Eagle Creek home that Canal did not manage the construction of their home. However, evidence was conflicting regarding whether

the representation induced reliance on the part of the Burrases. Both Mr. and Mrs. Burras testified they relied on these representations and were thereby induced to hire Canal. Steve Miller, however, testified that when he displayed the Eagle Creek home to the appellants, he already had a verbal commitment from them. This testimony indicates the Burrases may have already decided to hire Canal before the representations about the Eagle Creek home were made. In light of this conflicting evidence we may not reverse the trial judge's dismissal of the counterclaim for fraud.

The next issues raised by the Burrases involve a mechanic's lien filed by Canal after it walked off the job. The lien was to secure the balance of payments owed to Canal for their work on the house. On appeal the Burrases argue its claim for slander of title and claim under Indiana Code section 32–8–1–2[2] should not have been dismissed. Under both of these theories the appellants had to prove they owed no money to Canal. This would entitle them to relief under the statute or provide a basis from which the trial judge could have inferred Canal acted maliciously thereby providing the Burrases with an action for slander of title. The evidence of whether Burrases had fully paid Canal was conflicting. The appellants testified they had paid all bills while representatives of the appellee testified $20,000 was still due from the Burrases. The appellants are asking us to reweigh this evidence which is something our standard clearly prohibits. We affirm the trial court's dismissal of these two claims.

*Issue Four*

Appellants also argue that the award of $7,970 in damages for defective performance was inadequate. Burrases argue that they were entitled to a larger amount of compensatory damages caused by defective performance and also compensation for future repairs. Our standard on review of the trier of fact's award of damages is clear. We will reverse an award as inadequate only if it is so small as to indicate the trier of fact was motivated by passion or prejudice. *Long v. Johnson,* (1978) 177 Ind.App. 663, 381 N.E.2d 93, *trans. denied* (1979). Here, the damages awarded were for defective performance and breach of warranty. Although the Burrases submitted evidence that showed they sustained damages in excess of the amount awarded, this evidence was not without conflict. Furthermore, many of the losses incurred by Burrases beyond the $7,970 figure had nothing to do with defective performance or breach of warranty regarding workmanship. The damages awarded by the trial judge were within the scope of the evidence submitted to show defective performance and we must therefore affirm the award. *Id.*

*Issue Five*

Finally, the appellants challenge the trial court's award of $12,000 in attor-

2. This statute reads:
   "Forfeiture; commissioner to release and satisfy lien.
   Sec. 2. Any such owner, holder, or custodian, who is a resident of the state of Indiana, and who shall fail, neglect, or refuse, to release, discharge and satisfy of record any such mortgage, mechanic's lien, judgment, or other lien, when the debt or obligation thereby secured, together with the interest thereon, *shall have been fully paid,* and after fifteen (15) days' written demand by registered or certified mail with return receipt requested has been made to do so, shall forfeit and pay to the mortgagor, or other person, having the right to demand the release of such mortgage, or lien, a sum not to exceed five hundred dollars ($500) for such failure, neglect, or refusal, which sum may be recovered by suit in any court of competent jurisdiction, together with the costs and reasonable attorney's fees, if an attorney has been employed, incurred in the enforcement of such release, discharge, or satisfaction, and such court trying the case, shall in its finding, if it be in favor of the plaintiff, grant a reasonable attorney fee and the costs of such action as a part of the judgment. The court is hereby authorized and empowered to appoint a commissioner, and to authorize and direct such commissioner to release and satisfy such mortgage, mechanic's lien, judgment, or other lien, and the costs incurred in connection therewith shall be taxes as a part of the costs of such action. [Emphasis supplied.]"

ney fees to Canal.[3] The general contract contained a provision for attorney fees in the event the Burrases defaulted. Because we have already determined the Burrases had breached the contract by refusing to pay, the attorney fee provision should operate. This provision states:

"15. Default. Upon default by Owner in the performance of any obligations under this contract, Contractor shall have the right to terminate this contract and retain any payments made by Owner as liquidated damages, and receive final payment for work performed up to the date of termination, together with any costs of collection and reasonable attorneys' fees."

Record at 355–56. While Canal may collect fees from the Burrases it is clear from the contract provision that attorney fees must be reasonable. Furthermore, the contract allows fees only for the purpose of collecting outstanding payments.

The Burrases argue that the fees awarded are excessive because they are not limited to time spent for purposes of collecting money due Canal. We agree. The present suit initially was brought to collect outstanding payments from the Burrases. However, the Burrases counterclaimed and prevailed on theories of breach of warranty and defective performance. A losing party is never entitled to attorney fees. *State ex rel. Uebelhor v. Armstrong*, (1969) 252 Ind. 351, 248 N.E.2d 32. During the hearing on fees, Canal defended its request for fees as reasonable because it was necessary to have three lawyers for Canal present during the trial due in part to the number of counterclaims interposed. Therefore, a portion of the fees awarded were for the defense of counterclaims upon which the Burrases ultimately prevailed. This was improper.

This particular question on the allocation of fees has not been addressed in Indiana. In *Pioneer Constructors v. Symes*, (1954) 77 Ariz. 107, 267 P.2d 740, 744, the court found that where a party prevails on a contract under which fees are provided but the opposing party prevails on certain counterclaims, the recoverable attorney fees should be reduced "in proportion to the amount recovered on the [contract] less the amount recovered on the counterclaim." *See also*, 17 Am.Jur.2d *Contracts* § 292 at 709 (1964). Therefore the award of prejudgment attorney fees is reversed and remanded for a reduction in accord with this opinion.[4]

*Issue Six*

Canal also filed a petition for and was awarded post-judgment attorney fees. The Burrases challenge this as contrary to the law. However, Indiana courts have awarded attorney fees for effort spent on preparing appeals where fees were properly awarded at trial. In *Templeton v. Sam Klain & Son, Inc.*, (1981) Ind., 425 N.E.2d 89, suit was brought pursuant to a statute which provided attorney fees to the prevailing party. The court stated that an award of attorney fees for defending an appeal was also proper. The Burrases' attempt to distinguish the present case from *Templeton* on the grounds that we are presented with a contractual provision for fees instead of a statutory provision. We do not accept such a distinction in light of authority from other courts finding it appropriate to award post-judgment attorney fees pursuant to a contractual provision. *See Mershon Gimeno Constr. Co. v. Robinson*, (1975) Colo.App., 534 P.2d 635; *Management Services Corp. v. Development Associates*, (1980) Utah, 617 P.2d 406. However, the trial court is instructed to apply the same formula for post-judgment fees as set out above for prejudgment fees.

---

**3.** Canal originally requested $5,000 in attorney fees in its complaint and increased this request to $36,000 at the post-trial hearing on fees. These requests were made despite the fact that in Canal's complaint it prayed only for damages in the amount of $9,800.

**4.** This formula enables the trial judge to determine the amount of success obtained by the party entitled to attorney fees. However, this is only one factor to be considered when determining reasonable fees. For other factors we direct the trial court to the *Code of Professional Responsibility*, DR2–105(B) (1984).

Accordingly, we affirm on all substantive issues raised except the Burrases' counterclaim for conversion upon which Canal is liable as a matter of law. We reverse and remand for a determination of attorney fees due Canal.

NEAL, P.J., and ROBERTSON, J., concur.