**Donald V. NELSON, Appellant–
Plaintiff/Counter
Defendant,**

**v.**

**Hector J. MARCHAND and Debra
M. Marchand, Appellees–Defen-
dants/Counter Plaintiffs.**

No. 64A03–9704–CV–108.

Court of Appeals of Indiana.

Feb. 19, 1998.

Dave Welter, Valparaiso, for Appellant–Plaintiff/Counter Defendant.

Ann K. Staley, Petry & Fitzgerald, Hebron, for Appellees–Defendants/Counter Plaintiffs.

**OPINION**

STATON, Judge.

Donald Nelson appeals from a $19,022.82 judgment in favor of Hector and Debra Marchand. Nelson raises several issues on appeal which we restate as:

I.    Whether the Marchands were precluded from recovering because Nelson prevailed on his mechanic's lien.

II.    Whether pre-trial and trial conduct of the Marchands prevented Nelson from receiving a fair trial.

III.    Whether there is evidence supporting the trial court's findings that

Nelson breached construction warranties.

IV. Whether the evidence supports the trial court's awards.

V. Whether the trial court erred by not awarding Nelson attorney's fees.

We affirm in part, reverse in part and remand.

Nelson contracted to build the Marchands' home. Nelson completed the home as specified in the contract, also performing several changes to the original plans at added expense. Nelson submitted a bill for the changes to the original home plan.

In the interim, the Marchands submitted a "punch list"[1] to Nelson, requesting that he remedy the items on the list. Nelson agreed to address some of the items on the punch list, but did not feel responsible for all of them. The Marchands also complained of several problems with their home which they characterize as either inadequacies with the workmanlike quality of construction or deficiencies associated with materials used. Specifically, the Marchands refer to a cracked and crumbling driveway, leaks in the basement, an improperly vented bathroom fan, failure to termite proof under the basement floor and inadequate insulation on the floor of a room over the garage. Citing these problems with their home, the Marchands withheld payment from Nelson.

Nelson eventually filed a mechanic's lien against the Marchands' home. The Marchands' response included counterclaims for the above construction inadequacies. Nelson was granted summary judgment on his mechanic's lien for a total of $10,661.43 including interest, attorney's fees and costs. However, the Marchands later prevailed on their counterclaims, resulting in a net award for them. This appeal ensued.

■ Before addressing the merits of this appeal, we note our standard of review. The trial court, *sua sponte*, entered specific findings of fact and conclusions of law. When a party has requested specific findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A), the reviewing court cannot affirm the judgment on any legal

basis; rather, this Court must determine whether the trial court's findings are sufficient to support the judgment. *Vanderburgh Co. Bd. of Commissioners v. Rittenhouse*, 575 N.E.2d 663, 665 (Ind.Ct.App.1991), *trans. denied.* In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions entered on the findings. *DeHaan v. De-Haan*, 572 N.E.2d 1315, 1320 (Ind.Ct.App. 1991), *trans. denied.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

■ This same standard of review applies when the trial court gratuitously enters specific findings of fact and conclusions, with one notable exception. When the trial court enters such findings *sua sponte*, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *In re Marriage of Snemis*, 575 N.E.2d 650, 652 (Ind.Ct.App.1991). We may affirm a general judgment on any theory supported by the evidence adduced at trial. *Id.*

I.

*Effect of Mechanic's Lien*

■ The Marchands admitted that they owed Nelson money for the extra work and modifications he performed on their house. Accordingly, Nelson was granted summary judgment on his mechanic's lien. Nelson contends that since he was granted summary judgment on his lien, the trial court necessarily found that the Marchands repudiated the contract and that he was justified in suspend-

---

1. A "punch list" is a list of defects with the home or complaints the homeowner has regarding the home's construction, often compiled just before the homeowner takes possession.

ing performance. Accordingly, Nelson concludes that it is contrary to law to permit the Marchands to recover on their counterclaims.

This line of argument is not well taken. First, even assuming the Marchands repudiated the contract, the Marchands' counterclaims do not arise from any suspension of performance by Nelson. In fact, Nelson did not suspend performance at all. The home was completed when this dispute arose, albeit not satisfactorily to the Marchands. Rather, the Marchands alleged unworkmanlike construction and/or defects in materials: allegations regarding warranties. In short, the Marchands' claims do not concern failure to perform. Instead, the Marchands' claims concern failure to perform as warranted.

■ Second, it has long been the law in Indiana that a homeowner may offer evidence of faulty construction as a set-off or counterclaim against a mechanic's lien.[2] *See Korellis Roofing, Inc. v. Stolman,* 645 N.E.2d 29 (Ind.Ct.App.1995); *G. Cowser Constr. v. Nicksic,* 622 N.E.2d 1007 (Ind.Ct. App.1993); *Clark's Pork Farms v. Sand Livestock Systems, Inc.,* 563 N.E.2d 1292 (Ind.Ct.App.1990); *Burras v. Canal Constr. and Design Co.,* 470 N.E.2d 1362 (Ind.Ct. App.1984); *Orto v. Jackson,* 413 N.E.2d 273 (Ind.Ct.App.1980). The viability of these counterclaims is unaffected by the fact that the homeowner has breached the contract by withholding payment due to dissatisfaction with the work. *See Korellis,* 645 N.E.2d at 30 (homeowner recovered on counterclaim although entire payment initially withheld); *Cowser,* 622 N.E.2d at 1009 (successful counterclaim notwithstanding entire payment withheld); *Clark's Pork,* 563 N.E.2d at 1295 (viable counterclaim although final $80,000 payment withheld); *Burras,* 470 N.E.2d at 1364 (homeowner recovered on counterclaim although homeowner breached contract by unilaterally altering payment schedule); *Orto,* 413 N.E.2d at 275 (homeowner counterclaims viable notwithstanding refusal to pay contractor). Accordingly, we conclude that

the Marchands' counterclaims, which allege violation of warranties regarding workmanlike construction and materials, survive their refusal to pay Nelson.

## II.

### *Pre-trial and Trial Misconduct*

Nelson cites several acts by the Marchands before and during trial which he characterizes as misconduct impairing a fair and just adjudication of this cause. We agree with Nelson that the first incident is appropriately characterized as misconduct of the highest order, but we cannot conclude the trial court erred by not granting Nelson the relief he sought.

During a recess, Mr. Marchand approached Thomas Wright, a witness who was to testify on behalf of Nelson. Wright performed lawn care services for Mr. Marchand. Mr. Marchand fired Wright during the recess. Mr. Marchand testified that it was his intent to intimidate Wright's testimony by firing him. Wright stated that he felt he was fired because he was testifying. Nelson immediately moved for dismissal of the Marchands' counterclaims which the trial court took under advisement and ultimately denied.

■ It appears that Nelson requests us to reverse the trial court's decision not to dismiss the Marchands' claims. Whether to dismiss as a sanction for misconduct is reviewed under an abuse of discretion standard. *See Benton v. Moore,* 622 N.E.2d 1002 (Ind.Ct.App.1993), *reh. denied* (failure to prosecute); *Wozniak v. Northern Indiana Public Svc. Co.,* 620 N.E.2d 33 (Ind.Ct.App. 1993), *trans. denied* (discovery sanction). An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *McCullough v. Archbold Ladder Co.,* 605 N.E.2d 175, 180 (Ind.1993). In this case, the trial court noted that Wright still testified on Nelson's behalf, stating that

---

**2.** This is the procedure used below, although the process was accomplished in two steps instead of one. Nelson was granted summary judgment on his mechanic's lien and the Marchands were ordered to deposit $10,661.43 with the clerk of the court pending resolution of their counterclaims. After finding the Marchands entitled to

$19,022.82, the trial court ordered the Marchands to be refunded $8,306.43 which was their deposit with the clerk less $2,300 in attorney's fees and $55 in costs. The Marchands were then granted a net judgment for the balance of $10,-715.89 (the actual balance is $10,716.39).

he did not feel pressured by Mr. Marchand to change his testimony. Since Mr. Marchand's attempt at intimidating Wright appeared unsuccessful, the trial court ultimately denied Nelson's motion to dismiss. Under our standard of review, we cannot conclude the trial court erred.[3]

■ The remainder of Nelson's brief concerning alleged misconduct reads as a laundry list of disjointed grievances, none of which is placed in an appropriate legal context. Nelson first cites failure to comply with discovery deadlines. However, Nelson never asked that there be any type of sanction imposed for discovery abuse.[4] In fact, Nelson's brief is unclear as to what type of relief he seeks from us. In any event, a party may not request relief on appeal for which he made no claim to the trial court. *Tomahawk Village Apartments v. Farren,* 571 N.E.2d 1286, 1294 (Ind.Ct.App.1991).

■ Nelson did object to the introduction of a document at trial claiming that he never received it during discovery. The challenged document was the "punch list" discussed above. The trial court found that Nelson knew of this document and its contents since he received it around the time of closing on the house and had performed some of the tasks on the list. Under an abuse of discretion standard, *Wozniak,* 620 N.E.2d 33, we cannot conclude the trial court erred by finding that failure to re-supply this document during discovery is not the type of trial ambush warranting the document's exclusion.

■ Nelson next complains that the trial court erred by upholding his own objection to proffered hearsay testimony. To state this contention is to refute it. *See Ind. Dept. of Ins. v. Zenith Re–Insurance Co., Ltd.,* 596 N.E.2d 228 (Ind.1992), *reh. denied* (party will not be heard to complain of invited error).

As a further "irregularity," Nelson notes that the Marchands reduced the list of alleged defects in construction from sixteen to seven at a pretrial conference. Nelson does not provide any legal argument or authority which would support appellate relief based on this observation. Accordingly, we find this issue waived. Ind. Appellate Rule 8.3(A)(7); *Mitchell,* 677 N.E.2d 551.

The Marchands' counterclaims included a claim for slander of title based on Nelson's mechanic's lien. This claim was not pursued at trial, and Nelson moved for attorney's fees under Indiana Code § 34–1–32–1 (1993). However, Nelson notes "the trial court did nothing." We take this observation as a request that we award Nelson attorney's fees.

■ Indiana Code § 34–1–32–1 provides that the trial court *may* award attorney's fees, and a trial court's decision to award fees is reviewed under an abuse of discretion standard. *Kintzele v. Przybylinski,* 670 N.E.2d 101, 102 (Ind.Ct.App.1996). Again, Nelson offers no argument as to why the trial court abused its discretion, nor does Nelson offer case law or any other authority which would support reversing the trial court on this issue. Rather, Nelson notes that he moved for attorney's fees and that he did not get them. We are disinclined to research these matters for Nelson and, therefore, find the issue waived. Ind. Appellate Rule 8.3(A)(7); *Mitchell,* 677 N.E.2d 551.

### III.

### *Breach of Warranties*

The contract provides that the construction shall be done in a good and workmanlike manner. Nelson further agreed to provide labor and materials to correct defects in

---

**3.** Mr. Marchand devotes the majority of his argument on this issue to summarizing various criminal statutes and then demonstrating that he did not violate them, stressing that Wright was not in fact intimidated. The fact that Mr. Marchand's attempt at intimidating Wright appears unsuccessful has, in our opinion, no ameliorative effect from a moral or ethical standpoint: whether it does from a criminal standpoint is left to the Prosecutor of Porter County.

**4.** Nelson did file motions to compel which included requests for attorney's fees. However,

Nelson does not argue on appeal that he was entitled to fees. Accordingly, this issue is waived. *Mitchell v. Stevenson,* 677 N.E.2d 551 (Ind.Ct.App.1997), *trans. denied.*

In response to these alleged abuses, the Marchands respond that they were assessed attorney's fees as a discovery sanction. However, the only sanction we could locate in the record was completely unrelated to discovery. We hope counsel for the Appellees will more closely review the record in the future.

workmanship and materials for a period of one year after closing. The warranty did not cover ordinary wear and tear or the results of inherent characteristics of materials. It is these warranties which formed the basis of recovery for alleged defects in the basement, driveway, bathroom, insulation and termite proofing. The Marchands prevailed on all five alleged defects, and we address Nelson's multi-pronged challenges to each recovery in turn.

The Marchands recovered damages for two separate leaks they experienced in their basement.[5] Nelson accurately notes that the Marchands did not present any evidence that he failed to construct the basement in a workmanlike manner. The Marchands counter that they did not have to. The Marchands are correct.

Where a homebuilder guarantees the quality of workmanship and materials, a homeowner need not prove why a particular system failed, only that it did fail. *Peltz Constr. Co. v. Dunham*, 436 N.E.2d 892, 895 n. 3 (Ind.Ct.App.1982); *Orto*, 413 N.E.2d at 277. To this end, the Marchands and a contractor hired to remedy the leaks testified to witnessing water in the basement. This is all the evidence required to make a *prima facie* case for breach of the warranty of performing in a workmanlike manner, and it is not a part of the Marchands' case-in-chief to prove the cause of the water seepage.[6]

Nevertheless, Nelson urges that the evidence does not support granting the Marchands relief for the basement, citing testimony from contractors hired to alleviate the water seepage problem. These contractors dug around the basement, did not notice any deficiencies in the construction and did not determine the exact cause of the leaks. Nelson contends that to the extent there is any

evidence of the cause of the leaks, the contractors opined the cause was improper landscaping. This is a generous and unappreciated characterization of these contractors' testimony. One contractor stated that potential causes included a particularly hard rain, inadequate landscaping, or a poor tarring job, but that he really had no idea. The other contractor stated landscaping was a possible cause, but that it could have been a hundred different things. In any event, as Nelson is seeking to demonstrate that the leakage was due to an act of God or the negligence of the landscapers, it is Nelson's burden to prove these theories. *Orto*, 413 N.E.2d at 277. Nelson did not offer any evidence to support these theories and the testimony from the contractors is insufficient for us to conclude the trial court erred by not attributing liability elsewhere for the basement leaks. We conclude the evidence supports the finding that the basement seeped and the findings support the conclusion that Nelson breached his warranties.

Nelson next alleges that the Marchands could not recover for the basement since they did not give him notice of the defects. Nelson notes that before a breach of warranty results in a breach of contract, the owner must, in certain cases, give the builders notice of the defects. *Burras*, 470 N.E.2d at 1367. We take no issue with this proposition of law, but fail to see how it aids Nelson's cause. For the sake of argument only, we grant Nelson the fact that the Marchands did not notify him of defects. Thus, pursuant to *Burras*, the Marchands could not, under certain conditions, maintain a breach of *contract* action. However, there is no effect on the Marchands' ability to maintain a breach of *warranty* action for workmanlike construction.[7] In fact, *Burras*

5. In his Reply Brief, Nelson argues that Marchand failed to prove that the second leak occurred within the one year warranty period. This argument was not presented in his Appellant's Brief and is therefore waived. *Marshall v. Clark Equipment Co.*, 680 N.E.2d 1102, 1107–08 n. 5 (Ind.Ct.App.1997).

6. Nelson also raises this argument with respect to the driveway and bathroom vent. In fact, this is the only argument advanced regarding the bathroom vent. The argument fails for the reasons stated above.

7. Nelson does not explore the relationship between an action for breach of warranty and failure to provide notice of defects. For example, before an action for breach of the implied warranty of habitability may be maintained, the homeowner must provide notice of the defect and an opportunity to cure it. *Orto*, 413 N.E.2d at 276. Too, contracts may require notice and an opportunity to cure defects in workmanlike construction. *See, e.g., Burras*, 470 N.E.2d at 1367. These theories and their applicability to this appeal, if any, are unexplored by the parties, and we therefore express no opinion on them.

is an example of a homeowner succeeding on breach of warranty claims, although the trial court did not conclude the contractor breached the contract.[8]

The Marchands recovered for replacing a section of their driveway which "proceeded to crumble, chip, crack and disintegrate." Nelson contends that the warranty only covers latent defects and defects in workmanship, that the driveway's condition was not a latent defect, and that the Marchands were thus required to demonstrate that he breached the warranty by not correcting the defect. Without expressing an opinion on this dubious reasoning, we do note that Nelson did not demonstrate, or argue, that the Marchands' evidence was insufficient even under his interpretation of the warranty. This argument is waived. Ind. Appellate Rule 8.3(A)(7); *Mitchell*, 677 N.E.2d 551.

In the following three sentence paragraph, Nelson posits that since the Marchands and another contractor supplied plans and other specifications for the driveway, the warranty of performing in a workmanlike manner is inapplicable. This assertion is unsupported by citation to any legal authority and is also waived. Ind. Appellate Rule 8.3(A)(7); *Mitchell*, 677 N.E.2d 551.

■■■ Excluded from the warranty is damage from inherent characteristics of any material used in construction. Nelson contends that the alleged defects in the Marchands' driveway were solely the result of inherent characteristics of concrete. There is evidence that concrete work is generally not guaranteed since concrete will crack and chip regardless of care used in pouring. However, there is also evidence that the magnitude of the cracking and chipping in the Marchands' driveway was unusual. One witness testified that while stress cracks and chipping can be expected, the "chunks" of concrete from the Marchands' driveway were not "normal" nor were they the result of an inherent characteristic of concrete. Nelson's argument requests that we reweigh this conflicting testimony which, under our standard of review, we will not do. *DeHaan*, 572 N.E.2d at 1320.

Nelson finally contends that the award for repairing the driveway was excessive since the Marchands failed to mitigate their damages. In August of 1994, the Marchands received an estimate of $650 to $1,100 to replace an area of the driveway stretching three feet from the garage and across the driveway's width. Another estimate from September of 1995 was for $700 to replace a five foot by thirty foot section. Ultimately, the Marchands had a 28 foot by 29 foot section replaced in July of 1996 for $4,650.

■■■ A non-breaching party must mitigate damages. *Pierce v. Drees*, 607 N.E.2d 726, 729 (Ind.Ct.App.1993). "However, the principle of mitigation of damages addresses conduct by an injured party that *aggravates or increases* the party's injuries." *Wiese– GMC, Inc. v. Wells*, 626 N.E.2d 595, 599 (Ind.Ct.App.1993), *reh. denied, trans. denied* (emphasis added). Nelson offered no evidence that had the Marchands acted promptly there would not have been a need to replace such a large section of the driveway. In other words, Nelson failed to demonstrate that the Marchands' delay aggravated the condition of the driveway or otherwise increased their damages in this regard. Without such evidence, all that is presented are differing opinions on the appropriate scope of the remedy. The breaching party has the burden of proving the non-breaching party failed to use reasonable diligence in mitigating damages. *Pierce*, 607 N.E.2d at 729. Since Nelson did not present any evidence to show an aggravation of injury, we cannot conclude the trial court erred by awarding the Marchands the entire $4,650 to replace the affected portion of their driveway.

Too, since Nelson only discusses notice and breach of contract, rather than notice and breach of warranty, his arguments concerning late notice and being ousted from the Marchands' home before he could effect repairs are moot.

**8.** Much of the confusion at trial and on appeal can be explained by Nelson's failure to distinguish between a breach of contract action and a breach of warranty action. Although closely related, the two actions are not identical. A warranty is a promise, usually collateral to the principal contract, although not necessarily so. *Modern Woodmen of America v. Vincent*, 40 Ind. App. 711, 82 N.E. 475, 476 (1907). In this case, the contract consisted of a promise to build a home. The warranty was a subsequent promise to perform the first promise in a workmanlike manner.

## IV.

### Sufficiency of Evidence

Nelson argues that there is insufficient evidence of probative value to sustain the awards for improper insulation and failure to termite proof. Regarding the insulation, Mrs. Marchand testified that a room above the garage was cold. An investigation revealed inadequate insulation between the garage ceiling and the room's floor. A contractor insulated this area and performed several other jobs around the house. The total bill for this contractor's work was $577.50, but the bill did not differentiate between the insulating project and the other various projects performed. Nevertheless, the trial court awarded the Marchands the entire $577.50. This was error. A damage award will be upheld if it is within the scope of the evidence. *K Mart Corp. v. Beall*, 620 N.E.2d 700, 709 (Ind.Ct.App.1993), *reh. denied*. Awarding $577.50 was not only not within the scope of evidence but was contrary to the evidence since that amount encompasses projects unrelated and in addition to the inadequate insulation which formed the basis of the Marchands' complaint. The award cannot stand.

During construction, it was discovered that termite spray was not applied under the basement floor. Nelson himself testified that it would have cost him $600 to drill holes in the basement floor and spray for termites. The trial court awarded the Marchands $600, which is clearly within the scope of evidence presented at trial.

## V.

### Attorney's Fees

Nelson's final argument is that the trial court erred by not finding the Marchands in breach of contract by failing to pay for work completed. The failure to pay which Nelson relies upon is the precise same act which formed the basis of Nelson's mechanic's lien. Although styled as a breach of contract issue,

Nelson raises this issue for the purpose of arguing that he was entitled to attorney's fees. We conclude that neither party in this case is entitled to attorney's fees.

The contract provides that if a court should find *only one party* guilty of a breach of the agreement, then the non-breaching party is, under circumstances not relevant here, entitled to reasonable attorney's fees upon successful litigation. In this case, the trial court found both parties in breach of the agreement; the Marchands by failing to pay for work Nelson completed as alleged in the mechanic's lien,[9] and Nelson by failing to perform in a workmanlike manner. Thus, under the terms of the agreement, neither party is entitled to attorney's fees.

We do note that Indiana Code § 32–8–3–14 (1993) provides that a lienholder shall be entitled to reasonable attorney's fees in a suit brought to enforce a lien. "However, if a judgment on a counterclaim exceeds the judgment on the [mechanic's lien], the latter judgment is defeated and the lienor is not entitled to attorney's fees." *Clark's Pork*, 563 N.E.2d at 1300. In this case, the judgment on the Marchands' counterclaim, less attorney's fees to which we have concluded they are not entitled, is $10,211.82. The judgment on Nelson's mechanic's lien is $7,557.77. Accordingly, IC 32–8–3–14 does not save Nelson's attorney's fee award.[10]

In conclusion, we reverse the trial court's award of $577 for inadequate insulation and reverse the trial court's award of attorney's fees to both parties. The trial court is affirmed in all other respects, and we remand to the trial court with instructions to modify the judgments consistent with this opinion.

Affirmed in part, reversed in part and remanded.

HOFFMAN and DARDEN, JJ., concur.

---

9. This proposition was established when the court granted Nelson summary judgment on his mechanic's lien.

10. Nelson originally filed a mechanic's lien for $18,168.54 which was partially released leaving

a balance of $7,557.77. The latter amount is the amount Nelson recovered on his mechanic's lien, and is therefore the dispositive amount under the rule in *Clark's Pork*.