In re the ESTATE OF Howard S. GRIMM, Deceased.

James L. Grimm, Appellant–Objector Heir,

v.

Russell Kruse, Appellee–Personal Representative,

and

Howard Grimm, Jr., Edgar Grimm, Lloyd Grimm, and John C. Grimm, Appellees–Heirs.

No. 17A03–9806–CV–266.

Court of Appeals of Indiana.

Jan. 20, 1999.

Rehearing Denied March 26, 1999.

---

484 

Claramary Winebrenner, VanHorne & Stuckey, Auburn, for Appellant–Objector Heir.

John S. Bloom, J. Earl Tison, John D. Cowan, Bloom Gates & Whiteleather, Columbia City, for Appellees–Heirs.

## OPINION

BROOK, Judge.

### Case Summary

Appellant-objector heir James L. Grimm ("Grimm") appeals from the trial court's denial of his motion to correct errors that was filed in response to four court orders issued during the administration of the estate of Grimm's father, Howard S. Grimm, Sr. ("testator").

### Facts and Procedural History

Testator died on March 4, 1991, and his 36–page will and four-page codicil were admitted for probate in the DeKalb Circuit Court on March 14, 1991. On April 20, 1992, the total value of the estate was appraised at over $4.7 million and included 26 pieces of real property valued at over $1.9 million. The testator devised the bulk of his estate to his five sons and one daughter. Testator's daughter died during the administration of the estate, and her residuary share was split equally among the five sons, such that each received a one-fifth residuary interest in the testator's estate pursuant to the terms of the will. During the six and one-half years of estate administration, the trial court issued

numerous interlocutory orders in response to hearings and briefings on various issues. Three of these orders are particularly relevant to this appeal and will be discussed in more detail below, in addition to the trial court's final judgment in which these orders are subsumed.

On March 24, 1992, Grimm filed a petition for distribution of non-residuary legacy, requesting that the trial court distribute to him the Brown and Kochard Farms pursuant to Item VIII, paragraph (1) of the will, which granted Grimm life estates in the two farms subject to a remainder interest in his children. In his memorandum in support of the distribution, dated June 3, 1992, Grimm asserted that the testator clearly intended to bequeath the farms to him as outright gifts. Personal representative Russell Kruse ("Kruse") filed a memorandum in opposition to Grimm's petition on June 5, 1992, claiming that Grimm's petition should be denied, among other reasons, because of his pending $300,000 claim against the estate for improvements he had constructed on the Brown and Kochard Farms.

On April 29, 1992, Kruse filed a petition for allowance of fees to personal representative and attorneys in which he requested partial payment for his services and for the services of the law firm of Grimm & Grimm, P.C.: Edgar A. Grimm ("Edgar") and John C. Grimm ("John"), two of Grimm's brothers, served as attorneys for Kruse pursuant to the terms of the will.[1] In his petition, which was also signed by Edgar, Kruse accepted the testator's $25,000 limit for personal representative fees and noted that Grimm & Grimm had accepted the testator's $50,000 limit for attorney fees for administering the estate. On June 5, 1992, Kruse filed a memorandum in support of his petition, in which he mentioned that Grimm & Grimm had subcontracted with the law firm of Kruse & Kruse (managed by Kruse's two sons) "to assist in those administration tasks involving preparation of various tax returns." Kruse also noted that "[c]ompensation for *all* services rendered to, for and on behalf of the estate *cannot* and will not exceed $50,000.00 [emphasis in original]." On September 9, 1992, the court issued its decision denying Grimm's petition for partial distribution of his non-residuary legacy of the Brown and Kochard Farms and granting Kruse's request for payment of partial fees to the personal representative and his attorneys.

In response to Grimm's $300,000 reimbursement claim for improvements he had made to the Brown and Kochard Farms, Kruse filed an amended motion for summary judgment on behalf of the estate on December 23, 1992. Grimm claimed that he had paid for and constructed the improvements in reliance on testator's promise to give him the farms in his will. Kruse asserted that Grimm had been a tenant at sufferance on the farms and therefore was not entitled to be reimbursed for the improvements. On March 4, 1993, the trial court issued its decision granting the estate's motion for summary judgment against Grimm and denying his claim for reimbursement; the trial court agreed with Kruse that Grimm's "occupancy and use" of the farms constituted a tenancy at sufferance and further found that the improvements were merely "voluntary contributions" to the value of the farms.

On November 15, 1995, the trial court issued its decision determining various issues, including the disposition of the Muhn and

---

1. This Court is perplexed that Grimm did not more vigorously challenge his brothers' employment as attorneys for the personal representative as an obvious conflict of interest. *See* Ind. Professional Conduct Rule 1.7 (West 1998) and the corresponding comment section entitled "Other Conflict Situations":

> Conflicts of interest in contexts other than litigation sometimes may be difficult to assess. Relevant factors in determining whether there is potential for adverse effect include the duration and intimacy of the lawyer's relationship with the client or clients involved, the functions being performed by the lawyer, the likeli-

hood that actual conflict will arise and the likely prejudice to the client from the conflict if it does arise. The question is often one of proximity and degree....

> Conflict questions may also arise in estate planning and estate administration.... In estate administration the identity of the client may be unclear under the law of a particular jurisdiction. Under one view, the client is the fiduciary, under another view the client is the estate or trust, including its beneficiaries. The lawyer should make clear the relationship to the parties involved.

Sherck Farms and the Brown and Kochard Farms to Grimm. The trial court found that Grimm had exercised his option to purchase the Muhn and Sherck Farms at $830 an acre; however, the trial court later authorized Steel Dynamics, Inc. ("SDI") to purchase the Muhn Farm and Indiana & Michigan Power Company to purchase part of the Sherck Farm over Grimm's objection at values greatly exceeding the usual price for farmland in the vicinity. The funds from these sales were placed in an escrow account and later distributed to Grimm, who was paid less than eight percent interest on the funds in the account. With respect to the Brown and Kochard Farms, the trial court determined that Grimm's life estates in the two farms were to be "set-off against and chargeable against" his share of the residuary estate. The trial court found that the testator "frequently made clear that it was his intent to equally benefit his surviving children," and that the Brown and Kochard Farms were "not intended to be a gift or additional devise to James L. Grimm without charge." Ultimately, however, the trial court charged the fee simple value of the farms against Grimm's residuary share instead of the value of his life estates.

On December 17, 1997, the trial court issued its order regarding final accounting and the personal representative's petition to make final distribution. Kruse had requested payment of $15,000 for supervising the public auction of approximately $1.1 million of estate real estate, in addition to the $25,000 in fees he was allowed under the will; although there is no record that Kruse ever submitted an itemized billing statement for his services, the trial court granted his request and authorized a total payment of $40,000. The trial court also acknowledged that the law firm of Grimm & Grimm had been paid a total of $12,500 in attorney fees, although they never filed a written appearance or submitted a detailed invoice for their services. The trial court further authorized a total payment of $53,012.50 to the law firm of

Kruse & Kruse, who had contracted with Grimm & Grimm to perform tax work for the estate; Kruse & Kruse had received $12,500 of $25,000 that had been paid to Grimm & Grimm, but never filed a written appearance with the trial court and did not submit an invoice for their services until the final accounting. Finally, the trial court authorized a total payment of $60,483.31 to attorney John S. Bloom ("Bloom"), who was hired by Kruse after Grimm & Grimm had withdrawn their appearance as attorneys for the personal representative; Edgar and John had resigned because of the possibility that they would have to testify at a hearing on estate matters. The trial court's orders allowed the estate to pay the personal representative and his attorneys more than twice the amount that the testator had stipulated for their services in his will.

In response to the court's November 1995 decision, Grimm filed a motion to correct error on December 15, 1995, which was partially denied and partially granted by the trial court on January 16, 1996. The trial court issued its order regarding final accounting and the personal representative's petition to make final distribution on December 17, 1997. Grimm filed a motion to correct errors on January 15, 1998, which was denied by the trial court on February 12, 1998. Grimm now appeals in some part from the trial court's final order and the three interlocutory orders as subsumed therein.[2]

### Issues

The parties present several issues for our review, which we restate as follows:

(1) whether the trial court erred in ordering the estate to pay personal representative and attorney fees in excess of those specified in the will;

(2) whether the trial court erred in determining that the bequest of the Brown and Kochard Farms to Grimm was to be charged against his residuary share;

(3) whether the trial court erred in charging Grimm for the improvements he

---

**2.** Personal representative Russell Kruse and the four remaining brothers Grimm (Howard, Jr., Edgar, Lloyd, and John C.) are the named appellees in this action, and we shall refer to them collectively as "appellees" in this opinion unless

otherwise specified. We note that appellees did not include a statement of the case in their brief, which constitutes acceptance of Grimm's statement of the case. See Ind. Appellate Rule 8.3(B).

had originally paid for and constructed on the Brown and Kochard Farms; and

(4) whether the estate should pay Grimm eight percent interest on the proceeds from the sales of the Muhn and Sherck Farms.

### Discussion and Decision
#### I. *Personal Representative and Attorney Fees*

Grimm first argues that the trial court erred in ordering the estate to pay personal representative and attorney fees in excess of those specified in the will. Article I of the testator's codicil, which replaced Item XXXIV in the original will, reads in relevant part as follows:

#### "ITEM XXXIV"

I hereby nominate, constitute, and appoint THE AUBURN STATE BANK and a farmer, HAROLD MURPHY, as Co–Executors of this my Last Will and Testament. I further suggest that my said Personal Representatives shall employ counsel in the settlement and administration of said estate whose fee for legal services shall not exceed Fifty Thousand Dollars ($50,000.00), and the Co–Personal Representatives' fees, in total, shall not exceed Twenty-five Thousand Dollars ($25,000.00), and the acceptance by the law firm retained and by the Co–Personal Representatives respectively shall be considered an agreement that such fees and charges will not exceed said amounts. It is my suggestion that THE AUBURN STATE BANK handle and administer all cash, securities, income, and disbursements, to support information required by taxing authorities and the Final Accounting in my estate. It is further my suggestion that Harold Murphy manage and administer my farm operation during the administration of my estate. I hereby direct that EDGAR A. GRIMM and JOHN C. GRIMM [two of testator's five sons] and the Law Firm of GRIMM & GRIMM P.C. of Auburn, Indiana, shall be and serve as counsel for my Co–Representatives for the fees and charges for services herein set forth. In the event that

Harold Murphy declines or is not able to serve, then I nominate and appoint The Auburn State Bank as first alternate Executor, to serve alone and to receive the compensation as fixed herein for the Co–Personal Representatives.... I further empower, authorize, and direct my Personal Representative to CONDUCT MY ESTATE WITH UNSUPERVISED ADMINISTRATION, pursuant to the provisions of I.C. 29–1–7.5, as the same may from time to time be amended, without obtaining approval from my heirs, legatees, devisees, or guardians of the beneficiaries.

Neither of the co-executors named in the will agreed to become personal representatives of the estate. Russell Kruse subsequently agreed to serve in that capacity. The law firm of Grimm & Grimm opened the estate, but never filed a written appearance with the trial court. Grimm & Grimm subcontracted with the law firm of Kruse & Kruse to perform much of the tax work for the estate. Grimm & Grimm withdrew their representation on August 18, 1994, because of the possibility that Edgar and John would have to testify concerning certain estate issues. Kruse then hired John S. Bloom to serve as his attorney.

In an April 29, 1992, petition for allowance of fees to personal representative and attorneys that was signed by both Kruse and Edgar, Kruse included the following paragraph:

3. That Article I of the Codicil to the Last Will and Testament of Howard S. Grimm, executed on June 15, 1990, limits attorney's fees for services in connection with administration and settlement of the estate to $50,000.00 and the Personal Representative's fees to $25,000.00; that the Personal Representative has accepted such compensation conditions and has undertaken his services in the administration and settlement of this estate in reliance thereon; that counsel, Edgar A. Grimm and John C. Grimm have accepted such compensation restrictions and have undertaken to provide legal representation to the Personal Representative in consideration thereof; that Edgar A. Grimm and John C. Grimm have subcontracted with the

Law Firm of Kruse & Kruse of Auburn, Indiana, for the purpose of their preparing federal and Indiana estate tax returns and Indiana Inheritance tax returns.

The trial court's September 1992 order authorized a $25,000 partial payment of attorney fees to Grimm & Grimm and a $12,500 partial payment of personal representative fees to Russell W. Kruse. Grimm & Grimm apparently paid Kruse & Kruse $12,500 of the partial payment it received from the court order. Kruse & Kruse eventually accrued a total bill for legal services of $53,012.50, leaving an outstanding balance of $40,512.50; the trial court approved the payment of this balance in its December 1997 order. Bloom claimed $60,483.31 in attorney fees and expenses, for which he received an advance payment of $20,361.87 and a payment of the outstanding balance pursuant to the December 1997 court order. In his petition for final accounting, Russell W. Kruse requested payment of an additional $27,500 for his services that was granted in the December 1997 court order.

### A. Personal Representative Fees

The trial court's December 1997 order reads in relevant part as follows:

26. Russell W. Kruse has, to date, served as Personal Representative for the estate for approximately six and one-half (6½) years and the assets have been substantial and the estate administration has been complex and at times contentious.

27. Russell W. Kruse (who is a professional auctioneer and real estate agent), among other things, supervised the sale of approximately 1.1 million dollars worth of estate real estate in multiple parcels at public auction for which the estate did not pay any sales commission to him or anyone else.

28. Russell W. Kruse has claimed a Personal Representative's fee in the amount of $40,000.00.

29. *Indiana Code 29–1–10–13* provides in part that compensation for a Personal Representative may be allowed by the Court (in addition to the amount set in the will) "for other services not required of a personal representative."

30. The Court finds that $15,000.00 is a reasonable amount for a sales commission for the sale of 1.1 million dollars worth of estate real estate in multiple parcels at public auction (this is equivalent to approximately a 1.36% sales commission, far less than the 4% to 7% commission he could have charged the estate).

31. The Court finds that Russell W. Kruse's supervision of the public auction of the real estate and his services as real estate agent and auctioneer constitute "other services not required of a personal representative" for which additional compensation may and should be allowed.

IND. CODE § 29–1–10–13 governs compensation for personal representatives and attorneys performing services for the estate and provides in relevant part:

If a testator by will makes provision for the compensation of his personal representative, that shall be taken as his full compensation unless he files in the court a written instrument renouncing all claims for the compensation provided by the will before qualifying as personal representative. The personal representative, when no compensation is provided in the will, or when he renounces all claim to the compensation provided in the will, shall be allowed such compensation for his services as the court shall deem just and reasonable. Additional compensation may be allowed for his services as attorney and for other services not required of a personal representative. . . .

Grimm claims that the trial court abused its discretion in authorizing additional compensation for Kruse because he did not renounce his right to that fee in writing prior to qualifying as personal representative with the expectation that the trial court would award him "just and reasonable" compensation for his services. Grimm also argues that the trial court should not have awarded Kruse an additional $15,000 for auctioning the estate's real estate because he never entered a written contract regarding his commission pursuant to IND. CODE § 32–2–2–1:

**32–2–2–1 Written instrument; signatures; description of land**

Sec. 1. No contract for the payment of any sum of money or thing of value, as and for a commission or reward for the finding or procuring by one (1) person of a purchaser for the real estate of another, shall be valid unless the same shall be in writing, signed by the owner of such real estate or his legally appointed and duly qualified representative: Provided, That any general reference to such real estate sufficient to identify the same shall be deemed to be a sufficient description thereof.

Grimm asserts that Kruse as a personal representative is a "completely different" legal entity from Kruse as an auctioneer and broker, and that he should have been required to enter a written contract to claim his commission pursuant to IND. CODE § 32–2–2–1. Appellees dismiss Grimm's contract argument as a "red herring," essentially arguing that either the contract or the petition would be subject to the trial court's discretionary approval under IND. CODE § 29–1–10–13.

■ When no compensation is provided for a personal representative in a will, "the amount of allowance is left to the discretion of the trial court and the appellate court will not disturb such a ruling in the absence of abuse of discretion." *Matter of Newman's Estate*, 174 Ind.App. 537, 546–547, 369 N.E.2d 427, 432–433 (1977). In the instant case, however, the testator stipulated that acceptance of the personal representative's position "shall be considered an agreement" that "fees and charges *will not exceed*" $25,000 (emphasis added). During the November 4, 1997, final accounting hearing, Kruse testified that he had considered his agreement to serve as personal representative to be a contract entered into with the estate requiring the payment of $25,000 for his efforts. When asked by Grimm's counsel whether he believed he could change the contract when he initially accepted the position, Kruse answered, "No, no, I didn't, probably." As noted above, Kruse never filed a written instrument with the trial court "renouncing all claims for the compensation provided by the will before qualifying as personal representative" pursuant to IND. CODE § 29–1–10–13, nor is there any record that he ever submitted a detailed billing statement for the court's review.

■ IND. CODE § 29–1–10–13 allows additional compensation for "other services not required of a personal representative," and the trial court found that Kruse's supervision of the public auction of the estate constituted such "other services." When a trial court enters specific findings of fact and conclusions *sua sponte* upon a particular issue, this Court must determine as to that issue whether the findings are sufficient to support the judgment. *Nelson v. Marchand*, 691 N.E.2d 1264, 1267 (Ind.Ct.App.1998). "[W]e must first determine whether the evidence supports the findings and second, whether the findings support the judgment." *Id.* "The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions entered on the findings. Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them." *Id.* In determining whether the findings or judgment are clearly erroneous, "we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility." *Id.*

■ In our view, the trial court's determination that Kruse's services as "real estate agent and auctioneer" constituted "other services not required of a personal representative" is clearly erroneous. IND. CODE § 29–1–15–2 enables a personal representative to "sell, mortgage, lease or exchange property of the estate" without court order if given those powers under the terms of the will. Similarly, IND. CODE § 29–1–15–11 allows a personal representative to file a petition to "sell, mortgage or lease any real property belonging to the estate." A personal representative engaged in the unsupervised administration of an estate may "sell, mortgage, or lease any real or personal property of the estate" pursuant to IND. CODE § 29–1–7.5–3(23). Although the value of the auctioned real estate exceeded $1 million, there is no evidence that Kruse was required to fulfill any unusual duties or perform "ser-

vices not required of a personal representative" during the course of the auction. In fact, Item VIII, paragraph (16) of the testator's will specifically directs the personal representative to sell under court order any real estate not purchased by the testator's legatees and devisees. This provision, when viewed in conjunction with the testator's explicit instructions to provide no more than $25,000 for personal representative's fees and Kruse's subsequent written acceptance of this compensation, shows that the trial court clearly erred in awarding Kruse an additional $15,000.

■ To the extent that Kruse justifies his requested real estate commission upon general statutory provisions relative to real estate transactions, as opposed to probate personal representative fees, he was required by IND. CODE § 32–2–2–1 to enter into a written contract before receiving a commission for the auction of the testator's real estate. "Transactions between an executor and himself, as an individual, are open to suspicion and should be scrutinized carefully." *Pohlmeyer v. Second Nat. Bank of Richmond,* 118 Ind.App. 651, 665, 81 N.E.2d 709, 715 (1948). The appellees suggest that no such contract was required because Kruse's petition for additional compensation was subject to the trial court's approval in any event. In effect, appellees claim that the trial court acted within its discretion by ignoring the requirements of IND. CODE § 32–2–2–1.

■ Statutes requiring contracts for the employment of brokers to be in writing "are in derogation of the common law and should be strictly construed." *Brown v. Poulos,* 411 N.E.2d 712, 714 (Ind.Ct.App.1980). Since 1901, Indiana has precluded recovery of real estate sales commissions when the agreement is not in writing. *William S. Deckelbaum Co. v. Equitable Life,* 419 N.E.2d 228, 230 (Ind.Ct.App.1981), *modified on other grounds by* 422 N.E.2d 301 (Ind.Ct.App.

1981). "The purpose of [IND. CODE § 32–2–2–1] is to prevent disputes over the terms of a commission contract for finding a purchaser for real estate." *First Fed. Sav. Bank v. Galvin,* 616 N.E.2d 1048, 1055 (Ind. Ct.App.1993), *trans. denied.* In his brief in support of allowance of executor's and attorney's fees, Kruse estimated his requested "commission" as 1.5 percent of the auctioned real estate and touted this figure as a "considerable bargain to the estate." Nevertheless, both Kruse and the trial court are bound by the dictates of IND. CODE § 32–2–2–1.[3]

■ Finally, we note that in Item XXXIV (as revised by the codicil), the testator stipulated that the personal representative fees, "in total, *shall not exceed*" $25,000 (emphasis added). In our view, the testator did not intend for the personal representative to receive $25,000 as a lump-sum payment without regard to the services actually performed. *Cf. Matter of Estate of Meyer,* 668 N.E.2d 263, 265 (Ind.Ct.App.1996), *trans. denied* ("the words in a will are to be understood to have been used by the testator in their common and ordinary sense and meaning"). While we recognize that IND. CODE § 29–1–10–13 provides that a personal representative may take the specified testamentary remuneration "as his full compensation" unless he renounces it, the testator obviously intended the $25,000 figure to serve as a maximum limit and not as a fixed amount to be paid without regard to services actually rendered. Therefore, the trial court is ordered on remand to require Kruse to submit an itemized billing statement for his services and to remit to the estate any funds for which a satisfactory accounting cannot be made, with the total amount of just and reasonable compensation not to exceed the $25,000 limit.

### B. Attorney Fees

Grimm also claims that the trial court erred in ordering the estate to pay attorney

---

3. Appellees scoff at the notion of Kruse entering into a contract with himself; as a more plausible alternative, the trial court could have appointed a special administrator pursuant to IND. CODE § 29–1–10–15 to administer the real estate auction and to contract with Kruse for his services on behalf of the estate. Because one of Kruse's enumerated responsibilities as personal representative was selling real estate, however, we mention this moot possibility only by way of illustration.

fees in excess of the $50,000 the testator had specified in his will. As noted above, the law firm of Grimm & Grimm received payment of $25,000; $12,500 thereof was paid to the law firm of Kruse & Kruse, who received an additional $40,512 in compensation. Attorney John S. Bloom was employed by Russell Kruse and claimed an additional $60,483.31 in fees and services on behalf of the personal representative. IND. CODE § 29–1–10–13 contains the following language regarding attorney's services:

> An attorney performing services for the estate at the instance of the personal representative shall have such compensation therefor out of the estate as the court shall deem just and reasonable. Such compensation may be allowed at the final settlement; but at any time during administration a personal representative or his attorney may apply to the court for an allowance upon the compensation of the personal representative and upon attorney's fees.

Appellees argue that judicial recognition of a testator's authority to limit attorney fees has been confined to mere dicta and invites this Court to establish a clear precedent in this case concerning a trial court's "authority and discretion to approve the amount of attorney's fees claimed due as a result of its administration." As far as we can ascertain, appellees are correct in stating that our dicta in *Matter of Estate of Meguschar,* 511 N.E.2d 307, 310 (Ind.Ct.App.1987), *trans. denied,* concerning "testamentary compensation for attorneys and personal representatives" is not supported by any precedential holding in any Indiana case. It is our firm conviction that no such precedent exists because the right of a testator to limit testamentary compensation has never been seriously questioned. *See Mikesell v. Mikesell,*

432 N.E.2d 55, 58 (Ind.Ct.App.1982) (IND. CODE § 29–1–10–13 authorizes court to fix attorney and executor fees "[a]bsent testamentary compensation"); [4] *Pleska v. Zakutansky,* 459 N.E.2d 745, 749 (Ind.Ct.App. 1984) (same statute empowers court to set fees "[a]bsent a specific provision in the will"); *Ford v. Peoples Trust and Sav. Bank,* 651 N.E.2d 1193, 1194 (Ind.Ct.App.1995), *trans. denied* (court may award reasonable fees "where a testator does not provide for the compensation of the personal representative and the attorney performing services for the estate").

■ In *Meguschar,* we noted that absent testamentary compensation, IND. CODE § 29–1–10–13 authorizes a court to award reasonable attorney fees, the proper amount of which is left to the trial court's discretion. 511 N.E.2d at 310. Where a testator seeks to limit fees, as in the case at bar, we are cognizant of several conflicting interests that can threaten the otherwise orderly and amicable administration of an estate. First, the intent of the testator to limit administrative expenses and to preserve the corpus of the estate for legatees is of paramount importance and must be faithfully observed by the trial court. Next, we are faced with the language of IND. CODE § 29–1–10–13, which provides for the "just and reasonable" compensation of attorneys by the trial court. The statute does not expressly grant attorneys the right to renounce any fee limits set by the testator, nor does it expressly allow the trial court to authorize payment of fees above such limits; we recognize, however, that there may be instances where prudent and diligent attorneys must perform necessary services on behalf of the estate for which they justifiably seek payment in excess of the testamentary limits.[5] We need only

---

4. *Mikesell* is apparently the first case in which this Court specifically addressed the ability of a testator to limit compensation for attorneys in conjunction with IND. CODE § 29–1–10–13. *Mikesell,* 432 N.E.2d at 58. Our dicta on this issue was not based upon a misreading of the statute, but merely recognized in passing a testator's prerogative to limit compensation for attorneys.

5. IND. CODE § 29–1–10–13 does not expressly provide for the renunciation of testamentary

compensation by an attorney "performing services for the estate at the instance of the personal representative," although a personal representative is given this option. We do not reach the question of whether an attorney may also renounce testamentary fees and receive "just and reasonable" compensation under the statute, as this is a matter for the legislature to decide; rather, we maintain our well-settled position that the testator's intent must be given effect so long as it does not conflict with established rules of

refer to the instant case as an example of an estate administration that degenerated into a much more protracted and complicated quagmire than any of the parties could have foreseen at the outset. Finally, one may discern a general public policy interest in the economical and expeditious settling of estates that may be furthered by both reasonable testamentary fee limits and the vigilant supervision of estate administration by trial courts.

For these reasons, it is imperative that trial courts closely scrutinize the invoices submitted by attorneys when requesting payment for their services. Without such attentive supervision, the stated intentions of a testator to limit compensation and of IND. CODE § 29–1–10–13 to ensure the allowance of "just and reasonable" attorney fees are reduced to mere superfluities, and the economic interests of the estate and the legatees are needlessly exposed to the schemes of unscrupulous counsel.

■ Respecting the wishes of provident testators, yet recognizing that attorneys are entitled to just and reasonable compensation for their services on behalf of the estate, we therefore hold that trial courts must honor the testator's intent regarding attorney fee limits as faithfully as possible, but may authorize the payment of just and reasonable attorney fees beyond such limits if necessary under the circumstances. In so holding, we must admonish trial courts to monitor closely the expenditure of every dollar; we clearly do not intend to give courts license to grant attorneys their full testamentary compensation without question and begin only then to scrutinize their billing statements. Adhering to our standard in cases not involving testamentary compensation, this Court will review a trial court's determination of attorney fees where testamentary limits are present only for an abuse of discretion. *Cf. Pleska*, 459 N.E.2d at 749. In summary, we desire to strike a sensible balance between the potentially conflicting interests of testators who wish to preserve the bulk of their estates for the enjoyment of their legatees and conscientious attorneys who must put forth more effort into settling estates than they had originally estimated; trial courts thus become the critical fulcrum upon which this balance rests.

### C. Fee Distribution

Turning to the issue of fee distribution, we first note that Grimm & Grimm never filed a written appearance with the trial court, nor did they submit any billing statement itemizing their fees. In its September 1992 order granting request for partial payment of fees, the trial court authorized Kruse "to pay from estate funds ... a partial payment of attorney fees in the amount of $25,000.00." Kruse distributed these funds to Grimm & Grimm, who in turn paid $12,500 to Kruse & Kruse pursuant to their subcontracting agreement. After Grimm & Grimm withdrew their appearance, Kruse then contracted with Bloom on August 15, 1994, to serve as counsel to the personal representative; Bloom received a total of $60,483.31 from the estate for his fees and services.

■ Grimm & Grimm accepted the $50,-000 fee limit in writing as payment for their services and are therefore bound by their agreement. As noted above, Grimm & Grimm subcontracted with Kruse & Kruse to complete assorted estate work, with the latter firm receiving a total of $53,012.50 for its efforts. "Whatever may be the apparent or implied authority of an attorney handling an estate to bind the estate upon matters within the area of his employment, he has no apparent authority, solely by virtue of his employment, to employ other counsel at the estate's expense." *Estate of Anderson v. Smith*, 161 Ind.App. 480, 488, 316 N.E.2d 592, 596 (1974). Further, there is no evidence that Kruse as the personal representative for the estate had ever contracted for the legal services provided by Kruse & Kruse; consequently, the estate was never under any obligation to reimburse them.[6]

---

law. *Matter of Estate of Saylors*, 671 N.E.2d 905, 908 (Ind.Ct.App.1996).

**6.** It is interesting to note that in his April 29, 1992, petition for allowance of fees to personal representative and attorneys, Kruse stated that Grimm & Grimm "have subcontracted with the Law Firm of Kruse & Kruse ... for the purpose of their preparing federal and Indiana estate tax

Appellees refer to Item XXX of the will, which provides that "[i]n the event of dispute of facts or law, my Personal Representative ... shall have the right to obtain a second opinion from other counsel and pay the reasonable costs thereof," to support their contention that Bloom's court-authorized compensation should not be disturbed. Appellees fail to mention, however, that Bloom was hired to replace Grimm & Grimm after their resignation as counsel, not to provide Kruse with a second opinion on any particular matter. Grimm argues that Bloom was under constructive, if not actual, notice of the testator's fee cap before he filed an appearance with the court and should be subject to the $50,000 limit.

In his case description of services and expenses, Bloom noted that he reviewed the testator's will for an hour and a half on August 9, 1994, and researched the probate code "re: possession of assets and duties of Personal Representative, fees etc." on August 12, 1994. Both of these notations were made before Bloom signed an employment contract with Kruse on August 15, 1994, and filed his appearance with the trial court on August 25, 1994. As noted previously, Item XXXIV (as revised by the codicil) stipulates that "the acceptance by the law firm retained ... shall be considered an agreement that such fees and charges will not exceed [$50,-000]." The testator also directed that Grimm & Grimm "shall be and serve as counsel" for the personal representative "for the fees and charges for services herein set forth."

Aside from Item XXX, the will is silent with respect to the hiring and compensation of additional counsel. "If the testator's intent cannot be determined from the instrument, we then must look to the rules of construction being ever mindful that the testator's intent is what must ultimately prevail." *Donahue v. Watson*, 411 N.E.2d 741, 749 (Ind.Ct.App.1980). This Court must also "declare the meaning of the language used and not some possible, but undisclosed, purpose." *Matter of Estate of Walters*, 519 N.E.2d 1270, 1272 (Ind.Ct.App.1988), *trans. denied*. Further, a lawful general intent expressed in a will must be given effect at the expense of any particular intent. *Fowler v. Duhme*, 143 Ind. 248, 259, 42 N.E. 623, 626 (1896). Finally, all parts of the will must be considered together, "and it is the duty of the court to consider the circumstances under which the will was executed." *Spence v. Second Nat. Bank of Richmond*, 126 Ind. App. 125, 131, 130 N.E.2d 667, 669 (1955).

As the most cursory examination of the record would confirm, there can be no doubt that the testator could never have anticipated the depths of filial animosity and Byzantine legal complexity that were sounded during the six-and-a-half-year administration of his considerable estate. The testator could not have foreseen that two of his sons would withdraw their appearance as attorneys for the personal representative after three years in anticipation of testifying at a hearing "concerning certain issues which may need to be litigated in this matter[.]"

returns and Indiana Inheritance tax returns." Conversely, in his August 8, 1997, petition for attorney fees, *inter alia*, Kruse stated that he "employed the law firm of Kruse and Kruse as additional counsel to the estate." During an August 24, 1995, hearing, Kruse testified that Grimm & Grimm had hired Kruse & Kruse to complete some estate work; at the time the estate was opened, Kruse understood that the legal fees for the services of both law firms would total no more than the $50,000 stipulated by the will. Appellees assert that Kruse ratified the employment of Kruse & Kruse as attorneys for the estate by submitting a petition on their behalf for attorney fees. However, Kruse also testified in the August 1995 hearing that "I didn't know what to do with it when I got the extra bill from my son, Derald [of Kruse & Kruse]. I said, 'Well, if that's the way you feel about it, I guess I can't stop you from submitting it.' So I said, 'Submit it.' And

I, I'm not gonna approve it. The Judge would have to approve it or disapprove it." In its December 17, 1997, order regarding final accounting and petition to make final distribution, the trial court found that "Kruse & Kruse did on behalf of the law firm of Grimm & Grimm P.C. provide various sub-contract legal services frequently directly advising Personal Representative Russell W. Kruse and directly assisting him although Kruse & Kruse did not file a written appearance with the Court either." Without more, this Court cannot agree that Kruse effectively ratified or acquiesced in the employment of Kruse & Kruse as attorneys for the estate as contemplated in *Estate of Anderson*, 161 Ind.App. at 484, 316 N.E.2d at 594; rather, the will and the subcontracting agreement between the two law firms must control with respect to distribution of attorney fees.

Grimm does not dispute the reasonableness of Bloom's fees, but argues that the three law firms are bound to accept a total of $50,000 from the estate pursuant to the will. Appellees claim that the trial court was empowered with the discretion to award Bloom reasonable attorney fees pursuant to IND. CODE § 29–1–10–13. Testator first uses general language in Item XXXIV to limit attorney fees, without specifying which law firm should be hired by the personal representative:

> I further suggest that my said Personal Representative shall employ counsel in the settlement and administration of said estate whose fee for legal services shall not exceed Fifty Thousand Dollars ($50,-000.00), . . . and the acceptance by the law firm retained . . . shall be considered an agreement that such fees and charges will not exceed such amounts.

Prior to signing a contract with Kruse, Bloom examined the will for an hour and a half and undoubtedly reviewed the compensation restrictions in Item XXXIV; their contract, however, fails to mention the $50,000 limit. Nevertheless, the general intent of the testator was clearly to limit the total fees for legal services "in the settlement and administration" of his estate to $50,000, and our primary objective in construing a will is to "ascertain and give effect to the intent of the testator." *Pleska*, 459 N.E.2d at 748.

■ With the above considerations in mind, we therefore order the trial court on remand to settle the issue of attorney fee distribution in the following manner:

(1) limit the compensation of Grimm & Grimm, Kruse & Kruse, and Bloom to a total of $50,000 pursuant to the testator's stated intent if at all possible, subject to the following requirements:

(2) order the law firm of Grimm & Grimm to submit an itemized billing statement, describing in sufficient detail the hours expended and services rendered on behalf of the personal representative, and order the remittance of any compensation not satisfactorily accounted for or not considered "just and reasonable" pursuant to IND. CODE § 29–1–10–13;

(2) order the law firm of Kruse & Kruse to remit their compensation received from the estate and to look only to Grimm & Grimm for remuneration pursuant to the terms of their subcontracting agreement; should this agreement require Grimm & Grimm to submit an itemized billing statement on behalf of Kruse & Kruse, the trial court shall review the statement and authorize payment of "just and reasonable" compensation pursuant to IND. CODE § 29–1–10–13;

(3) review the itemized billing statement submitted by Bloom and order the remittance of any compensation not considered "just and reasonable" pursuant to IND. CODE § 29–1–10–13;

(4) should any fees be remitted to the estate by any or all of the above attorneys, disburse the proceeds in accordance with the terms of the will.

## II. Disposition and Valuation of Brown and Kochard Farms

Before we fully address the issues concerning the Brown and Kochard Farms, we must summarily reject appellees' contention that Grimm waived his right to appeal the trial court's March 1993 and November 1995 orders disposing of these issues. Ind. Trial Rule 54(B) reads as follows:

> **(B) Judgment upon multiple claims or involving multiple parties.** When more than one [1] claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to

revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. A judgment as to one or more but fewer than all of the claims or parties is final when the court in writing expressly determines that there is no just reason for delay, and in writing expressly directs entry of judgment, and an appeal may be taken upon this or other issues resolved by the judgment; but in other cases a judgment, decision or order as to less than all the claims and parties is not final.

In the case at bar, the trial court did not direct the entry of a final judgment with respect to its March 1993 and November 1995 orders as permitted by T.R. 54(B); therefore, Grimm need not have appealed these orders before the trial court issued its December 1997 order regarding the final accounting. *See Newman's Estate*, 174 Ind. App. at 544, 369 N.E.2d at 431. Appellees' "distinct and definite branch" arguments are no longer good law and merit no further consideration. *See Berry v. Huffman*, 643 N.E.2d 327, 329 (Ind.1994) ("[j]udgments or orders as to less than all of the issues, claims, or parties remain interlocutory until expressly certified as final by the trial judge").

Grimm's claimed error concerns the trial court's March 1993 and November 1995 orders regarding its disposition of the Brown and Kochard Farms. Grimm argues that the testator expressly bequeathed to him a life estate in the two farms, with the remainder to go to Grimm's children. The trial court, however, found that the farms were "not intended to be a gift or additional devise ... without charge." Grimm points to both the testator's wording and the placement of the provision governing the disposition of the two farms, asserting that its unique, unambiguous language and distinctive location within the document provide definitive evidence of the testator's intent to bequeath the two properties to Grimm as an outright gift without charge to his residuary share. In the alternative, Grimm states that if the will does contain any ambiguities concerning the distribution of the Brown and Kochard Farms, there is sufficient outside evidence of the testator's intent to resolve any ambiguities in his favor. Failing this alternative, Grimm claims that he should be charged only for a life estate in the two farms.[7]

The contested provision follows descriptions of fifteen tracts of real estate and may be referred to as Item VIII, paragraph (1):

My son, James L. Grimm, shall have a life estate in the Brown Farm and the Kochard Farm, at the then fair market value as appraised by three appraisers named by the Court having jurisdiction, being disinterested and knowledgeable realtors, all of different firms or businesses, who are known for their integrity, honesty, competence and probity to appraise real estate; then the remainder (after the life estate of James L. Grimm) shall go to my grandchildren, Jamie Grimm, Jennifer Grimm, and James Michael Grimm, children of my son, James L. Grimm, share and share alike, in equal shares as tenants in common.

Paragraphs (2) through (9) contain instructions relating to profit and income from real estate, accounting, and matters concerning the trustee for the testator's daughter. Paragraphs (10) through (14) grant options to the testator's four remaining sons to purchase certain properties and provide that if a son should exercise his option to purchase the designated real estate, the purchase price thereof "shall, at the option of my said [son/sons] be charged against [his/their] respective one-sixth interest in the corpus of my estate, including [his/their] respective one-sixth interest in the assets of my living and revocable Trust in the Fort Wayne National Bank." Upon the death of the testator's daughter, each son received a one-fifth residuary interest in the estate.

Grimm cultivated and lived on the Brown and Kochard Farms (often referred to collec-

---

7. In its November 15, 1995, decision determining various issues, the trial court found that the testator's intent was to "charge the value of the life estates against James L. Grimm's equal one-sixth share in the residuary estate and it was not intended to be a gift or additional devise to James L. Grimm without charge." According to the record, however, the fee simple value of the two farms (i.e., $196,800 for the Brown Farm and $56,000 for the Kochard Farm) was charged against Grimm's residuary interest.

tively as "the Brown Farm") for approximately 30 years and spent approximately $300,000 on various improvements to the properties, including a swimming pool and pool house, grain bins, fertilizer tanks, and the construction of a pole building. The testator had advised Grimm "not to worry about the permanency of the arrangement" and had orally indicated to Grimm that he could not purchase the Brown Farm because it would eventually be given to him, i.e., "taken care of in [testator's] Last Will And Testament." On August 19, 1991, Grimm filed a claim against the estate, seeking reimbursement of the $300,000 he had spent on the improvements. Kruse denied Grimm's claim and subsequently filed a motion for summary judgment against Grimm on behalf of the estate. In its March 1993 order in favor of Kruse's motion, the trial court found that Grimm's use of the Brown Farm "constituted a permissive tenancy at sufferance," and that because the testator had not authorized an agreement for reimbursement, the improvements were nothing more than "voluntary contributions" made by Grimm to the value of the farm. The trial court also found that the doctrine of promissory estoppel did not apply in Grimm's case because the testator had in fact conveyed a life estate interest in the property to his son, who would therefore suffer no injustice if the testator's promise was unenforceable.

In its November 1995 order, however, the trial court determined that Grimm's life estates in the Brown and Kochard Farms were to be charged against his residual share and were "not intended to be a gift or additional devise" without charge. The court's rationale depended heavily upon its interpretation of the testator's purported intent to "equally benefit his surviving children"; the wording of the devises to Grimm's brothers as noted above; and the testator's grant of the farms to Grimm at the appraised fair market value, which indicated his intent to charge Grimm's interests therein against his share of the residuary estate. Grimm argues that the trial court's orders are contradictory: either the testator was promisorily estopped to give Grimm the farms, or he did in fact bequeath the farms in his will. If the testator did give the farms to him as a gift, Grimm argues, he

should not be compelled to purchase them and pay twice for the value of the improvements.

▮▮▮▮▮ The interpretation of a will is a question to be determined by a court as a matter of law. *Estate of Meyer*, 668 N.E.2d at 265. The intent of the testator is our primary focus when construing the language of a will. *Id.* "In determining the testator's intent, we look to the four corners of the will and the language used in the instrument." *Id.* "[T]he words in a will are to be understood to have been used by the testator in their common and ordinary sense and meaning." *Id.* An ambiguity must exist before this Court is permitted to construe the will; "[i]n the absence of an ambiguity, the express language of the will should be enforced." *Estate of Walters*, 519 N.E.2d at 1272. If the language of the will creates an ambiguity, we must first determine whether the testator's intent is clearly articulated in other provisions of the will. *Pleska*, 459 N.E.2d at 749. Finally, although we may be guided by previous cases, "the meaning of each will is determined by its own particular facts." *Id.*

In support of their argument that the testator intended for the value of the Brown and Kochard Farms to be charged against Grimm's residuary interest, appellees refer to Item VIII, paragraph (15), which states in relevant part:

My Personal Representative shall, within thirty (30) days from the date on which said Personal Representative receive[s] notice of the exercise of option to purchase or notice of declination of options as given in paragraphs numbered 1, 10, 11, 12, 13, and 14 of this item . . .

Although appellees do not vigorously assert that Grimm's bequest should be considered an option, they do argue that paragraph (15) "flatly contradicts" his contention that the farms were intended to be outright gifts. Appellees also refer to Item VIII, paragraph (17), which provides in part:

Upon consummation of sales for all of the tracts of real estate owned by the Testator at his decease, and after making adjustment for purchase of any of said real es-

tate by my said legatees and devisees *named in this Item,* and *charging* all or a part of the purchase price thereof against the respective share or shares of any of said legatees and devisees purchasing the same, then my Personal Representative shall distribute the principal of said funds upon the closing of my estate, together with any undistributed income remaining in the hands of said Personal Representative as follows[...]

(Emphasis supplied per appellees' brief.) According to appellees, paragraph (17) shows that the testator intended for all real estate devised in Item VIII, including the Brown and Kochard Farms, to be charged against the devisees' respective shares.

▅▅▅ Appellees' arguments fail to withstand the scrutiny of the well-settled doctrine that "[w]here an interest in real estate is given in clear and decisive terms, such interest will not be cut down by subsequent provisions that are not as clear and decisive as the prior words giving the interest or estate." *Johnson v. Hicks,* 231 Ind. 353, 359, 108 N.E.2d 129, 131 (1952). In Item VIII, paragraph (1) of his will, the testator unequivocally and unambiguously devised life estates in the Brown and Kochard Farms to Grimm, with the remainder interests therein to go to Grimm's children; there is no mention of options or charges in the paragraph, nor is Grimm required to give notice of his intent to purchase the farms within 90 days from the date of probate. The unique wording and location of paragraph (1) in relation to the other provisions granting Grimm's siblings options to purchase certain properties must be considered further dispositive evidence of the testator's intent to distribute the Brown and Kochard Farms to Grimm as outright gifts. Therefore, the subsequent tangential references to options in paragraphs (15) and (17) cannot cut down the life estates clearly bequeathed to Grimm without charge in paragraph (1). *Id.; see also Keplinger v. Keplinger,* 185 Ind. 81, 86, 113 N.E. 292, 293 (1916) (after testator's intent has been ascertained, "ambiguous terms not reconcilable therewith may be disregarded").

▅▅▅ With respect to the provision that Grimm "shall have a life estate in the Brown Farm and the Kochard Farm, at the then fair market value as appraised," we note that this language is clearly intended to specify the value of Grimm's interest in the farms for tax purposes. *See* IND. CODE § 6–4.1–5–1.5 (appraisal date of property interest transferred by decedent is date used to value same for federal estate tax purposes); *cf. Indiana Dept. of State Revenue, Inheritance Tax Division v. Puett's Estate,* 435 N.E.2d 298, 300 (Ind.Ct.App.1982) ("where a testator has devised future estates, the present value of the future estate, life estates, and remainders, are determined at his death according to appropriate statutory methods, tables and actuarial formulae"). As specific bequests, therefore, the Brown and Kochard Farms must be taken out of the testator's estate before any residual devises pursuant to Item V of the will. The trial court is ordered on remand to recalculate the value of Grimm's life estates and his children's remainder interests in the Brown and Kochard Farms according to the standards set forth in IND. CODE §§ 6–4.1–5–1.5 and 6–4.1–6–1, *inter alia,* for applicable state and federal estate and inheritance tax purposes and to monitor the proper and timely payment thereof. The trial court is further ordered to remove the value of the farms as a charge against Grimm's residuary share, such that the equal distribution of the residuary estate remains undisturbed in accordance with the testator's wishes.

### III. Improvements to the Brown and Kochard Farms

Grimm argues that he should not have to "buy back" the $300,000 of improvements he made to the Brown and Kochard Farms. He seeks relief under principles of equity and cites *Skendzel v. Marshall,* 261 Ind. 226, 301 N.E.2d 641 (1973), *cert. denied,* 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476 (1974) in support of his claim. Appellees correctly point out that *Skendzel* involved a written land sale contract and purchase equity, rather than the "voluntary contributions" of a tenant at sufferance as in Grimm's case. In support of their position, appellees cite *Merrill v. Wimmer,* 481 N.E.2d 1294, 1299 (Ind.1985):

'The power or function of the court is limited to the construing of a will, that is, the interpretation of the language used by the testator, and it may not make or re-write the will for the testator under the guise of construction, even to do equity or accomplish a more equitable division of the estate, or for the purpose of making it more liberal and just, or even though in-terested parties are agreeable thereto. So the courts have no right to vary or modify the terms of a will, or to reform it, even on grounds of mistake, accident, or surprise * * *.' [Footnotes omitted.] 95 C.J.S. *Wills* § 586, pp. 710–713.

(Brackets in original.) Appellees also cite *Weishaar v. Burton*, 132 Ind.App. 597, 606, 179 N.E.2d 211, 215 (1962), claiming that it is for the testator and not for the courts to establish what constitutes a just, liberal, eq-uitable, and proper disposition of the testa-tor's estate.

■ Absent a contract with the testator or a provision in the will stipulating reim-bursement for the improvements, we must agree with appellees that Grimm is not enti-tled to be remunerated for them, even at their depreciated value. Grimm fails suffi-ciently to address appellees' contention that his voluntary contributions to the value of the farms did not constitute purchase equity therein; instead, he claims to have paid for the land in a "moral sense" by "living on it and improving it." Without the support of relevant legal authority, however, Grimm's argument remains unconvincing.

### IV. Payment of Interest on Proceeds from Sale of Muhn and Sherck Farms

With respect to Grimm's argument that the estate must pay him eight percent inter-est on the proceeds of the sale of the Muhn and Sherck Farms, appellees concede this point pursuant to IND. CODE § 24–4.6–1–103, which provides in relevant part:

Interest at the rate of eight percent (8%) per annum shall be allowed:

(a) From the date of settlement on mon-ey due on any instrument in writing which does not specify a rate of interest and which is not covered by IND. CODE § 1971, 24–4.5 or this article[.]

Appellees also refer to *Matter of Estate of Kingseed*, 413 N.E.2d 917, 935 (Ind.Ct.App. 1980), in which we held that "[w]hen the rate of interest is not otherwise agreed upon by the parties, the statutory rate of prejudg-ment interest is applicable." With no other allegations of error asserted, we need not consider this matter further.

### Conclusion

The trial court's orders as noted above are affirmed in part and reversed in part and remanded for further proceedings consistent with the instructions contained in this opin-ion, namely:

(1) that Kruse must submit an itemized billing statement for the court's review, after which he may receive just and reasonable compensation for his ser-vices rendered on behalf of the estate up to a limit of $25,000, with any un-merited compensation to be remitted to the estate;

(2) that the law firm of Grimm & Grimm must submit an itemized billing state-ment to the court for determination of just and reasonable compensation for their services, with any unmerited compensation to be remitted to the es-tate;

(3) that the law firm of Kruse & Kruse must remit the compensation received from the estate and look only to Grimm & Grimm for remuneration pursuant to their subcontracting agreement; should this agreement require Grimm & Grimm to submit an itemized billing statement on behalf of Kruse & Kruse, the trial court shall review the state-ment and authorize payment of just and reasonable compensation;

(4) that Bloom's billing statement must be reviewed to determine whether his compensation was just and reasonable, with any unmerited compensation to be remitted to the estate;

(5) that Grimm & Grimm, Kruse & Kruse, and Bloom may not receive more than a total of $50,000 for their services, unless the trial court finds that their

requests for compensation beyond this limit are just and reasonable under the circumstances;

(6) that Grimm's life estates in the Brown and Kochard Farms must be treated as specific bequests, with remainder interests therein to go to Grimm's children; consequently, applicable estate and inheritance taxes on the farms must be recalculated and paid accordingly, and the value of the farms must be removed as a charge against Grimm's residuary share, such that the equal distribution of the residuary estate remains undisturbed; and

(7) that the estate must pay Grimm eight percent interest on the proceeds of the sale of the Muhn and Sherck Farms.

Affirmed in part, reversed in part, and remanded with instructions.

SHARPNACK, C.J., and SULLIVAN, J., concur.