Oneida KELLY, Appellant–Petitioner,

v.

ESTATE OF Jimmie "JJ" JOHNSON, Deceased, Vivian Stinson, Personal Representative of the Estate of Jimmie "JJ" Johnson, Ralph E. Dierlam and Robin O'Neill, Appellees–Respondents.

No. 82A01–0208–CV–305.

Court of Appeals of Indiana.

May 29, 2003.

Reed S. Schmitt, David G. Harris, Frick, Powell, Whinrey, Cravens & Schmitt,

LLP, Evansville, IN, Attorneys for Appellant.

R. Lawrence Daly, Wright & Daly, Evansville, IN, Attorney for Appellees.

**OPINION**

MATTINGLY–MAY, Judge.

Oneida Kelly appeals the trial court's interpretation of the will of her brother, Jimmie A. Johnson. On appeal, Kelly raises one issue: Whether the trial court erred when it interpreted "all the remaining living room furniture" to mean "everything in the living room including everything on the walls and everything placed on a flat surface." We reverse and remand with instructions.[1]

*FACTS AND PROCEDURAL HISTORY*

Johnson executed his last will and testament on July 23, 1996. Part II of that will provided for the following disposition of personal property:

a. I will, devise and bequeath my antiques to ONEIDA KELLY, of Glenwood, Arkansas, which antiques are found in the dining room, my two (2) bedrooms, my porch, my bathroom, my hallway, the wooden horse in the living room, three (3) Russian Icons of her choice, all antique dolls, all antique light fixtures and all of the rest of my personal property not otherwise mentioned. It is my wish and desire that ONEIDA KELLY provide care, maintenance and sustenance for Gladys F. Beatty while [sic] so long as she lives.

b. I will, devise and bequeath all of my kitchen utensils and the contents of my kitchen to ROBIN O'NEILL, of Evansville, Indiana.

c. I will, devise and bequeath to ZELDA RATLIFF, of Madisonville,

Kentucky, my Chardon Jean painting on porcelain and a painting of a lady with a little girl on my credenza in the dining room.

d. I will, devise and bequeath to ESTER WALLAR, of Evansville, Indiana, all my St. Nicholas, Santa Claus and Christmas Decorations.

e. I will, devise and bequeath to ASHLEY HAY, of Glenwood, Arkansas any automobile that I own at the time of my demise.

f. I will, devise and bequeath to RALPH DIERLAM, of Iowa, all of the remaining living room furniture and all of the remaining Russian Icons after my sister, ONEIDA KELLY, chooses three (3) of the Russian Icons first.

(Appellant's App. at 16–17.)

Johnson died on August 24, 2000. Johnson's will was admitted to probate. During administration of the estate, Kelly and Dierlam began to dispute the proper interpretation of section f of Part II of the will. Dierlam believed that Johnson's devise to Dierlam of "all the remaining living room furniture" granted all the contents of the living room, after any other specific bequests had been removed, to Dierlam. Kelly, on the other hand, believed the bequest to Dierlam of "all the remaining living room furniture" granted Dierlam only large items such as chairs, tables, and desks, not paintings or other decorative items placed on tables, shelves, or desks. According to Kelly, all of the paintings and other decorative items belong to her because subsection a gives her "all the rest of [Johnson's] personal property not otherwise mentioned." (*Id.* at 16.)

After a hearing, the court entered a "Memorandum of Decision" in which it determined that "all the remaining living room furniture" meant "everything in the

---

1. Appellant's motion for oral argument is    hereby denied.

living room including everything on the walls and everything placed on a flat surface." (*Id.* at 10–11.) In other words, the trial court interpreted the will in favor of Dierlam, giving him all the remaining contents of the living room. Thereafter, the court made a formal entry of its decision. Kelly petitioned the trial court to permit interlocutory appeal. The trial court granted her request. Kelly petitioned this court to accept interlocutory jurisdiction, which we granted.[2]

### DISCUSSION AND DECISION

■  Kelly asks that we review the trial court's interpretation of "all the remaining living room furniture." The interpretation, legal effect, or construction of a will is a question we determine as a matter of law. *In re Estate of Meyer,* 668 N.E.2d 263, 265 (Ind.Ct.App.1996), *reh'g denied, trans. denied.* Consequently, we give no deference to the trial court's decision and review the question de novo.[3] *Bader v. Johnson,* 732 N.E.2d 1212, 1216 (Ind.2000) ("where the issue presented on appeal is a pure question of law, we review the matter de novo").

■  We may not construe a will unless an ambiguity exists in the will. *In re Estate of Grimm,* 705 N.E.2d 483, 498 (Ind.Ct.App.1999), *reh'g denied, trans. denied.* In the absence of an ambiguity, we must enforce "the express language of the will." *Id.* Before construing ambiguous language in a will, "we must first determine whether the testator's intent is clearly articulated in other provisions of the will." *Id.*

In the context of contract interpretation, we have stated "A contract term is not ambiguous merely because the parties disagree about the term's meaning." *Roy A. Miller & Sons, Inc. v. Industrial Hardwoods Corp.,* 775 N.E.2d 1168, 1173 (Ind. Ct.App.2002). Rather, language is ambiguous only if reasonable people could come to different conclusions about its meaning. *Id.* We apply the same standard here to determine whether the language in the will is ambiguous.

■  When construing the language of a will, our primary objective is to determine the intent of the testator. *Id.* To determine his intent, we look at the language used within the four corners of the instrument. *Id.* We presume the testator used words in their "common and ordinary sense and meaning." *Meyer,* 668 N.E.2d at 265. In addition, while previous decisions may help guide our interpretation of language, the meaning of language in any will is determined by the facts particular to that will. *Grimm,* 705 N.E.2d at 498.

■  At issue is the meaning of the word "furniture." Each party cites numerous sources, including dictionaries, case law, and the opinion of an auctioneer/appraiser, to support his or her version of the meaning of furniture. Much to our surprise, there is in fact a wide divergence in the meaning given to "furniture" across sources. Interestingly, it appears that the definition of the term has, to some extent, changed over time.

Older sources tend to interpret furniture as *all* the items in a room, including china, lamps, paintings, and candlesticks. For example, Black's Law Dictionary defines furniture as:

> that which furnishes, or with which anything is furnished.or supplied; whatever

---

2.  Kelly also petitioned this court to stay the requirement that she submit a $30,000 appellate bond. We granted that request in a previously issued order.

3.  We reject the suggestion by Dierlam that we should apply the standard applied to a negative judgment or to a judgment entered with findings and conclusions.

must be supplied to a house, a room, or the like, to make it habitable, convenient, or agreeable; goods, vessels, utensils and other appendages, necessary or convenient for housekeeping; whatever is added to the interior of a house or apartment, for use or convenience.

Black's Law Dictionary 804 (4th ed. rev. 1968) (citing *Bell's Adm'x v. Golding*, 27 Ind. 173, 1866 WL 2544 (1866)). In addition, prior to 1958, almost all of the jurisdictions that had considered the definition of furniture had settled upon this broad definition. *See* 17A Words and Phrases 614–19 (Perm. Ed.1958).

Newer sources tend to interpret furniture to mean only large movable items, such as chairs, couches, desks, cabinets, and tables. For example, the dictionary provided on the internet by Encarta defines furniture as **"tables and chairs:** the movable items such as chairs, desks, or cabinets in an area such as a room or patio." Encarta World English Dictionary [North American Ed.] (2003), "http://Encarta.msn.com/ encnet/features/dictionary/DictionaryResults.aspx?search=furniture" (last visited May 2, 2003) (emphasis in original) [hereinafter "Encarta Dictionary"]. In addition, a man who had been dealing antiques for forty years testified at the hearing that "it is my opinion that a piece of furniture is something that you would put something in, something that

you would sit or sat on or something that you would sit something upon." (Appellant's App. at 206–07.) He also testified that ceramic figures, paintings, knickknacks, and decorations are not what he would consider furniture.

Because of this divergence of definitions, we hold that the term furniture is ambiguous. However, we need look no further than the other sections of Part II of Johnson's will to determine whether the trial court's interpretation is correct. Contrary to the trial court's interpretation, Johnson did not intend to give Dierlam "everything in the living room including everything on the walls and everything placed on a flat surface." (*Id.* at 12.) If Johnson had so intended, his will would have given Dierlam "the remaining contents of the living room," just as he gave O'Neill the "contents of [his] kitchen." (*Id.* at 16.) Consequently, Johnson must have meant something less than all the contents of the living room when he gave Dierlam "all of the remaining living room furniture." [4]

The question remains: If Dierlam was not intended to receive the entire contents of the living room, what exactly did Johnson mean by "furniture"? Because the other parts of Johnson's will indicate he did not intend to give away the entire contents of his living room when he used the word furniture, we look at newer definitions of the word furniture to construe the language in his will.[5]

---

**4.** The attorney who drafted Johnson's will testified; however, his testimony did not resolve what Johnson meant by "all the remaining living room furniture." That attorney first testified that he did not intend to differentiate between "contents" and "furniture" and that he thought Johnson intended to give the entire contents of the living room by using the words "living room furniture." Then, one page later in the transcript, the same attorney testified that he did not believe furniture was intended to include ceramic items, knickknacks and other things of that nature. Con-

sequently, his testimony does not help determine Johnson's intent.

**5.** Dierlam argues that we must use the definition of furniture adopted by our supreme court in *Bell*, 27 Ind. 173, and applied by this court in *Stockton v. State Bank of Rensselaer*, 121 Ind.App. 7, 96 N.E.2d 910 (1951). However, in *Stockton*, when deciding how to define "furniture" we said:

[The] broad definition [of furniture] was proper in [*Bell*] because it is evident the

The Cambridge Dictionary of American English defines "furniture" as "items such as chairs, tables, and beds that are used in a home or office." Cambridge Dictionaries Online, "http://dictionary.cambridge.org/define.asp? key=furniture*1+0&dict=A" (last visited May 1, 2003). As mentioned earlier, the Encarta Dictionary defines furniture as "**tables and chairs:** the movable items such as chairs, desks, or cabinets in an area such as a room or patio." *See* Encarta Dictionary, "http://Encarta.msn.com/encnet/features/Dictionary/ DictionaryResults.aspx?search=furniture" (last visited May 2, 2003) (emphasis in original).

Based upon those definitions, we hold that Johnson intended to give Dierlam large items that one would expect to find in a furniture store, including but not limited to tables, chairs, couches, and cabinets. We also hold that Johnson did not intend to give Dierlam the decorative items sitting in or on the large items, such as lamps, vases, statues, and candlesticks.[6] Finally, because Johnson separately indicated that Dierlam was to get the "Russian Icons" and the exhibits in the record indicate that many of those icons are hanging on the walls, we hold that Johnson's devise of furniture did not give Dierlam the items hanging on the walls, such as pictures and paintings. Consequently, we reverse the trial court's order and remand for further proceedings consistent with this opinion.[7]

Reversed and remanded with instructions.

BROOK, C.J., and FRIEDLANDER, J., concur.

---

parties intended to lease all the furnishings used in operating the hotel involved. With like reasoning it can be said that, in the present case, the testator intended to give to the appellee Snow whatever was necessary and proper for convenient and comfortable living in a five-room house.

*Stockton,* 96 N.E.2d at 911. As that quotation makes clear, we applied the definition from *Bell* because that definition made sense given the facts of *Stockton.* Given the facts here, however, it is not proper to apply the supreme court's definition from *Bell.* Rather, we apply a definition that makes sense in the context of the other language used in the will. *See Grimm,* 705 N.E.2d at 498 ("although we may be guided by previous cases, the meaning of each will is determined by its own particular facts") (internal quotations omitted).

6. In the event any Russian icons were placed in or on a large item, our holding is not intended to alter Johnson's specific bequest of those items to Dierlam.

7. Proper adjudication of this appeal did not require us to address Kelly's third argument. Therefore, we make no holding regarding whether the trial court should have applied a rule of law requiring an ambiguous will to be construed in favor of any possible intestate beneficiaries.